MAX N. TOBIAS, JR., Judge.
|2Wendi Bonck, the plaintiff/appellant herein, appeals the trial court’s judgment granting a motion for summary judgment against her on the issue of whether the policy of automobile liability insurance procured by her from the defendant/appellee, Progressive Security Insurance Company (“Progressive”), provided her uninsured/underinsured motorist bodily injury coverage (“UMBI”). After reviewing the record and applicable law, although we find that electronic signatures are acceptable under Louisiana law on a UMBI form, we find the existence of genuine issues of material fact remain, thus presently precluding the granting of summary judgment. Accordingly, we reverse the judgment of the trial court and remand the matter for further proceedings.
The facts are simple and largely undisputed. On Friday, 18 March 2011, Ms. Bonck visited the office of Progressive. There, she met with an insurance agent about obtaining motorist insurance for her and her husband. All discussions that she had with the agent took place in the office. Ms. Bonck completed her insurance application online, with the assistance of a Progressive’s agent. She also ^signed the application online using an “electronic signature.” [1] The insurance became effective for an initial period of six months on Sunday, 20 March 2011; the policy was renewed and extended for another six-month on 20 September 2011; a policy declarations page was transmitted to Ms. Bonck for the original policy period and the extension, both of which reflected that the policy provided no UMBI coverage. Ms., Bonck was involved in a motor vehicle accident on 6 December 2011. On 27 February 2012, she filed suit against the other driver involved in the accident and against Progressive as her UMBI carrier.
Progressive denied providing Ms. Bonck with UMBI coverage and, after answering the petition, filed a motion for summary judgment. In connection with its motion, Progressive produced a UMBI form dated Tuesday, 22 March 2011. This was allegedly initialed and signed electronically by Ms. Bonck waiving the UMBI coverage.
Ms. Bonck opposed the motion, denying that she had signed the form waiving UMBI coverage. She also argued that electronic signatures could not be used on insurance policies, including UMBI forms. Finally, she pointed out that her name was misspelled, to-wit, “Wendy” was typed onto the form, whereas, she spells her name “Wendi,” thereby arguing that someone • other than herself completed the form.[2]
I/The trial court heard the motion for summary judgment, found that the Uni *653 form Electronic Signature Act applied, and granted the motion. This timely appeal followed.
The first issue we address is whether the Uniform Electronic Signature Act satisfies the requirement set forth in Duncan v. U.S.A.A Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, and thus, is applicable to UMBI forms. After a thorough review, we find that it does.
We first note what La. R.S. 22:1295 states in pertinent part:
The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(l)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (l)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a Rpolicy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneco-nomic loss. This coverage shall be known as “economic-only” uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected *654 economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability |,¡insurance covering any accident which occurs in this state and involves a resident of this state. [Emphasis supplied.]
As stated earlier, the Louisiana Legislature enacted the Uniform Electronic Signature Act, La. R.S. 9:2606, et seq., in 2001. Section 2607 thereof states:
A. A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
B. A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.
C. If a law requires a record to be in writing, an electronic record satisfies the law.
D. If a law requires a signature, an electronic signature satisfies the law. [Emphasis added.]
La. R.S. 9:2607.
No case exists in Louisiana that applies this statute to a UMBI form. Only one federal court case even mentions the statute. In Hill v. Hornbeck Offshore Services, Inc., 799 F.Supp.2d 658, 661 (E.D.La.2011), the court stated:
Moreover, state law also gives legal effect to both electronic contracts and signatures. See La.Rev.Stat. § 9:2607. Therefore, in the absence of fraud, misrepresentation, or deceit, one is bound under Louisiana law to the terms of a contract, signed electronically or otherwise.
However, we agree with Ms. Bonck that Hill addressed an arbitration clause in an incentive program offered by the plaintiffs employer, not a contract of insurance and a UMBI form. The case, therefore, offers no guidance to us for the issue at hand.
Following the enactment of the Electronic Signature Act, then-Acting Commissioner of Insurance, J. Robert Wooley, issued Advisory Letter # 01-08. Therein, he states that the letter is to advise of the authorization to use electronic |7signatures in transacting the business of insurance in Louisiana. Obviously, this would include automobile insurance contracts and the required UMBI form.
We find that the Uniform Electronic Signature Law, La. R.S. 9:2606, et seq., applies to automobile insurance policies and required UMBI forms, and that signatures includes initialing. This, however, does not end our analysis.
*655 A motion for summary judgment is a procedural device used when no genuine issue of material fact exists for all or part of the relief prayed for by a litigant. Duncan v. U.S.A.A. Inc. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 546; see La. C.C.P. art. 966. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, 07-1726, pp. 4-5 (La.2/26/08), 977 So.2d 880, 882-83.
In Duncan, the Supreme Court set forth the requirements of the UMBI form:
Essentially, the prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
Id., 06-363 at pp. 11-12, 950 So.2d at 551.
In the case at bar, we find that the UMBI form was filled out in accordance with Duncan. However, we find that genuine issues of material fact exist.
First, in her affidavit, Ms. Bonck denies electronically signing the UMBI form. Because the form is dated four days (on Tuesday, 22 March 2011) after the | ^initial application, she asserts that it was not completed on the day (18 March 2011) she visited Progressive’s office. Ms. Bonck claims that all discussions she had with the agent were conducted in person, presumably on 18 March 2011. Because an affidavit from the Progressive insurance agent who dealt with Ms. Bonck was not submitted by Progressive, this testimony is un-controverted. The affidavit from Debra Henry, who was assigned by Progressive to examine the policy, merely states what the UMBI form shows; her affidavit does nothing to refute Ms. Bonck’s assertions that, admittedly, are self-serving. However, her assertions coupled with the 22 March 2011 date on the UMBI form create a genuine issue of material fact. Therefore, summary judgment was erroneously granted.
Based on the foregoing, we reverse the judgment of the trial court and remand the matter for further proceedings.

REVERSED; REMANDED.

. In 2001, the Louisiana Legislature enacted the Uniform Electronic Signature Act, La. R.S. 9:2606, et seq. In advisory letter # OI-OS, the commissioner of insurance authorized the use of electronic signatures in transacting the business of insurance.

. We find no merit to the argument regarding the spelling of Ms. Bonck's first name, as it is also "misspelled” on the application for insurance that she herself allegedly completed online. If we were to embrace her argument, Ms. Bonck would have no insurance at all.