DANIEL L. DYSART, Judge.
| plaintiffs, Andrea Weddborn and Rene Martinez, individually and on behalf of their minor children, Jonathan Martinez and Jeremy Martinez, appeal two summary judgments, one granted in favor of Affirmative Insurance Company (“Affirmative”), and the other in favor of National Automotive Insurance Company (“National”). Both judgments were granted on the basis that neither insurer’s policy provided uninsured/underinsured (“UM”) motorist coverage for the plaintiffs’ vehicle. For the reasons that follow, we reverse and remand.[1]
FACTUAL AND PROCEDURAL BACKGROUND
On December 16, 2012, plaintiffs were involved in an automobile accident near the intersection of Pontchartrain Expressway and South Claiborne Avenue in Or *83 leans Parish, Louisiana.[2] According to their petition for damages, the accident was caused when an unidentified driver of another vehicle, changed lanes, struck the plaintiffs’ vehicle and then fled the scene of the' accident. Plaintiffs filed suit on December 16, 2013 against Affirmative and National, alleging that each issued a policy of insurance which provided UM coverage to the plaintiffs, which covered the damages they sustained as a result of the accident.
| ¡Almost a year later, on November 18, 2014, Affirmative filed' a Motion for Summary Judgment'. National then filed its own summary judgment motion on March 25, 2015. In each motion, the insurer argued that plaintiff, Andrea Weddborn, rejected UM coverage on her vehicle. National made the further argument that under the terms of its policy, it was terminated on the date on which Ms. Wedd-born procured a policy of insurance through Affirmative.
Affirmative’s motion was heard in the trial court on February 27, 2015, and was orally granted and designated as a final judgment. Plaintiffs filed a motion for appeal of that judgment on March 3, 2015. - Thereafter, a written judgment was issued by - the trial court on March 13, 2015, which was designated as a final judgment, and the order of appeal was signed on March 19, 2015.[3]
• The trial court then heard National’s motion, filed on March 25, 2015, on May 22, 2015 and, by judgment dated June 16, 2015, National’s motion was | ¡¡granted and designated as final. Plaintiffs timely appealed that judgment on July 7,2015.

Standard of review of motions for summary judgment

We note at the outset that, for reasons completely unclear from the record, Ms. Weddborn purchased two insurance'policies, one from Affirmative and the other from National, and both covering essentially the same policy period. The National policy reflects coverage on a 2007 Toyota Camry with a policy period from' November 4, 2012 through May 4, 2013. The Affirmative policy reflects coverage on two vehicles (a 2007 Toyota Camry and a 1997 Ford F150 pickup truck) with a policy *84 period from December 14, 2012 through June 12, 2013. The record does not reflect that either policy was formally terminated or canceled; accordingly, for purposes of this opinion, we must assume that both policies were in effect at the time of the accident.
At all times pertinent to this matter, La. C.C.Pr. art. 966 B(2) provided that a motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the- affidavits, if any, admitted for purposes of the motion for summary judgment, shpw, that there is no genuine issue as to material fact, and that mover is entitled,.to judgment as a matter of law.” The burden of proof remains with the party moving for summary judgment; however, “if the movant will . not bear the burden of proof at trial on the matter .that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to- the adverse party’s claim, action, or defense.” La. C.C.P. art. 966 C(2). |/Thereafter! if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id.
The summary judgment “procedure is favored and shall be construed” to “secure thé just, speedy, and inexpensive determination of every action, except those disallowed by Article 969.” La. C.C.P. art. 966 A(2). Motions for summary judgment are reviewed de novo “under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.” Wilson v. Calamia Constr. Co., 11-0639, p. 3 (La.App. 4 Cir. 9/28/11), 74 So.3d 1198, 1200. See also, Maradiaga v. Doe, 15-0450, p. 4 (La.App. 4 Cir. 11/25/15), 179 So.3d 954, 957.
We have conducted a de novo review of the record in this matter and we And that the trial court erred in granting summary judgment as to both insurers’ motions insofar as neither insurer properly, supported its respective motion, given Ms. Weddborn’s affidavits submitted in opposition to each motions. While we acknowledge that those affidavits are self-serving, we find that they are sufficient to create an issue of material fact, as discussed fully below.

UM coverage

Under the Louisiana uninsured motorist statute, La. R.S. 22:1295, “all automobile liability insurance policies that are delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide uninsured motorist coverage equal to the liability provided for bodily injury, unless it has been validly rejected or lower uninsured motorist limits have been selected.” Rapalo-Alfaro v. Lee, 15-0209, pp. 5-6 (La.App. 4 Cir. 8/12/15), 173 So.3d 1174, 1178. The burden of proving that an insured validly rejected UM coverage (or selected lower limits) rests with the insurer. Id., 15-0209, pp. 9-10, 173 So.3d at 1180 quoting Duncan v. U.S.A.A. Ins. Co., 06-0363, p. 5 (La.11/29/06), 950 So.2d 544, 547 (“the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits”). See also, Villalobos v. USAgencies Cas. Ins. Co., 12-1491, p. 4 (La.App. 4 Cir. 3/27/13), 112 So.3d 398, 400.
*85 Importantly, under La. R.S. 22:1295(l)(a)(ii), “[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.” Case law has repeatedly affirmed this statutory principle, that a properly completed UM selection form which rejects coverage creates a rebuttable presumption that the insured knowingly rejected uninsured motorist coverage. Rapalo-Alfaro, 15-0209, p. 10, 173 So.3d at 1180 (eniphasis added); see also, Terrell v. Fontenot, 11-1472 (La. App. 4 Cir. 6/27/12), 96 So.3d 658; Taylor v. U.S. Agencies Cas. Ins. Co., 09-1599 (La.App. 1 Cir. 4/7/10), 38 So.3d 433.
A “rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.” La. R.S. 22:1295(l)(a)(ii). In order for a UM selection form- to be considered valid, the Louisiana Supreme Court, in the seminal case of Duncan v. U.S.A.A. Ins. Co., 06-0363, pp. 11-12 (La.11/29/06), 950 So.2d 544, 551, indicated that:
[T]he prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits' lower than the policy limits are chosen (available in | (¡options 2 arid 4), ■ then filling in "the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representa-five; (5) filling in .the policy number; and (6) filling in the date.
The commissioner of insurance'published a proper ÜM selection of coverage form pursuant to La. R.S. 22:1295(l)(a)(ii) which was issued in LDOI Bulletin 08-02 (8/29/08).
DISCUSSION
The UM selection forms attached to the Affirmative and National insurance policies track, verbatim, the language prescribed by the LDOI in its Bulletin 08-02 (8/29/08). Ms, ■ Weddborn makes blanket assertions, without a meaningful explanation of her position, that the Affirmative and the National UM selection forms are invalid because each “falls short of meeting the strict requirements of Louisiana law.” However, there is no question that, on their faces, both the Affirmative and the National UM Selection forms are valid and comply with the mandates of Duncan and La. R.S. 22:1295.
On each of the UM selection forms, UM coverage was rejected; the following selection was made:
“I do not want UMBI[4] Selection. I understand that I will not be compén-sated through UMBI coverage for losses arising from an accident caused by an unirisured/underinsured motorist.” (Emphasis supplied.)
' The Affirmative UM selection form contains Ms. Weddborn’s electronic initials and her electronic signature dated December 11, 2012. The National form, 17on the other hand’, contains a handwritten signature and initials ’dated Nbvember 2, 2012.[5]
*86 Ms. Weddborn denies having executed either the Affirmative or the National UM selection form. In opposition to both motions for summary judgment, Ms. Wedd-born submitted affidavits to that effect, discussed more fully infra. Ms. Wedd-born maintains that these affidavits create fact issues for which summary judgment is inappropriate and that neither Affirmative nor National met its burden of proving that she executed the UM selection forms.
While Affirmative and National may ultimately be successful in proving the validity of UM selection forms with properly supported motions for summary judgment, at this time, based on our jurisprudence regarding UM selection forms, and the record before us at this time, we find that neither insurer met its burden of proof on summary judgment that no issue of material fact exists. The record does not reflect whether any discovery was conducted in this matter. The insurers simply filed certified copies of their insurance policies, along with the UM selection forms by which Ms. Weddborn purportedly rejected UM coverage, without any firsthand information as to how the policies were procured.

Affirmative’s and National’s proof of the validity of the UM selection form

'In support of its motion for summary judgment, Affirmative attached an affidavit from Affirmative, executed by its representative, Jose Sergio Vidal, who | «merely attested that he reviewed Affirmative’s records and that they show that (1) the policy never provided UM coverage; (2) Ms. Weddborn executed the UM selection form; (3) Ms. Weddborn did not pay premiums for UM coverage; and (4) Ms. Weddborn never changed the coverage under her policy.[6]
National, too, submitted an affidavit in support of its motion for summary judgment. That affidavit, of Dennis Schneider, National’s underwriting manager, also merely attests to the authenticity of the policy, the fact that National received a rejection of UM coverage form, and that he reviewed the policy and it does not provide UM coverage.

Ms. Weddborn’s affidavits in opposition to motions for summary judyment

In opposing Affirmative’s motion for summary judgment, Ms. Weddborn executed an affidavit and attested to the fact that, although she did procure a policy of insurance from Affirmative, (1) she did not reject UM coverage; (2) she did not grant anyone authority to initial or sign the UM rejection form on her behalf; (3) she did not apply for the Affirmative policy on line; rather, that she went in person to an agency to procure the policy; (4) she did not purchase the Affirmative policy on line; (5) she did not electronically initial or otherwise electronically execute any documents in connection with the Affirmative policy; (6) all documents were executed by hand; (7) the insurance agent did not discuss UM coverage with her; (8) she never advised the insurance agent that she did not want UM coverage; (9) |ashe did not make any written selection of UM coverage or electronically indicate that she rejected UM coverage; and (10) she never *87 agreed to procure the Affirmative policy through electronic means.[7]
With respect to the UM selection form attached to National’s motion for summary judgment, Ms. Weddbom’s position is the essentially the same that she took with the Affirmative — that she did not sign the UM selection form. In her affidavits in opposition to National’s motion for summary judgment, Ms. Weddborn attested to the fact that she did not reject UM coverage with National, that she did not authorize anyone to reject UM coverage for her and that she did not sign or initial the UM rejection form attached to National’s policy.
In further opposition tb the National’s motion, Ms. Weddborn submitted copies of medical records from treating health care providers and she argued that “the initials and signature on the relevant UM selection form do not match |in[those] ... as reflected in the certified copy of her relevant medical records ... which were introduced into evidence in opposition to National’s motion.” Essentially, Ms. Weddborn is alleging that the UM selection form was fraudulently executed and/or that the UM sélection form was forged; indeed, she explicitly states that the form “was completed by someone other than [her] ... making [it] ... invalid.”
The record does not reflect that National took any steps to investigate the contents of Ms. Weddborn’s affidavit (which was.provided three months prior to the hearing on its motion) or the signatures on her medical records, despite having a copy those records two weeks before the hearing on National’s motion for summary judgment. Nor does the record reflect that National sought a continuance of the hearing on its motion so as to conduct discovery on these issues. Similarly, National filed no memorandum in reply to Ms. Weddborn’s opposition.
It is Ms. Weddborn’s contention that these affidavits sufficiently demonstrate *88 factual issues in dispute thereby making summary judgment inappropriate,
It is clear that electronic signatures may b'e valid on UM rejection forms. This Court recognized the validity of electronic signatures in Bonck v. White, 12-1522, p. 6 (La.App. 4 Cir. 4/24/13), 115 So.3d 651, 654, where we found that “the Unifonh Electronic Signature Law, La. R.S. 9:2606, et seq., applies to automobile insurance policies and required UMBI forms, and that Signatures includes initial ing.” Numerous cases have' followed Bonak and reaffirmed that an electronic signature on a UM'rejection form may be valid. See, e.g., Maradiaga v. Doe, 15-0450, p. 7 (La.App. 4 Cir. 11/25/15), 179 So.3d 954, 959, writ denied, 15-2361 (La.2/26/16), 187 So.3d 470; Rapalo-Alfaro, 15-0209, p. 13, 173 So.3d at 1181; \uId. See also, (“electronic signatures under Louisiana’s Electronic Transactions Act are given-the same legal effect as all other types of signatures”). ■ "
While an electronic signature may be considered valid, the production of a UM rejection form, alone, ⅛ insufficient to establish that an insurer has borne its burden of proof on a motion for summary judgment, when there is a sworn statement by an insured denying that she executed the-form. Such a statement creates, at the least, a credibility issue for which summary judgment is inappropriate. See, e.,g„ Tate v. Progressive Sec. Ins. Co., 05-0393, pp. 8-9 (La.App. 4 Cir. 3/22/06), 929 So.2d 188, 193 (“[w]hen the evidence presented is subject to different interpretations and the trier of fact must weigh contradictory testimony and assess witness credibility oh a material fact, summary judgment is not proper”).
In Bonck, the plaintiff filled out an insurance application on line, with the assistance ‘of the insurer’s agent, and she signed the insurance application eléctroni-cally. The policy did not provide UM coverage. When the plaintiff made a claim for UM benefits following an automobile accident, the insurer moved for a summary judgment dismissal onlhe basis that the policy did not provide any UM coverage.
' While the Court found that. the UM coverage form met all of the requirements to be effective under Louisiana law, it also found genuine issues of material fact remaining:
First, in her affidavit, Ms. Bonck denies electronically signing the UMBI form. Because the form is dated four days (on Tuesday, 22 March 2011) after the initial application, she asserts that it was not completed on the day (18 March 2011) she visited Progressive’s office. Ms. Bonck claims that all discussions, she had with the agent were conducted in person, presumably on 18 March |122011. Because an affidavit from the Progressive insurance agent who dealt with Ms. Bonck was not submitted by Progressive, this testimony is uncontroverted. The affidavit from Debra Henry, who was assigned by Progressive to examine the policy, merely states what the UMBI form shows;- her affidavit does nothing to refute Ms. Bonck’s assertions that, admittedly, are self-serving. However, her assertions coupled with the 22 March 2011 date on the UMBI form create a genuine issue of material fact. Therefore, summary judgment was erroneously granted,
Bonck, 12-1522, pp. 7-8, 115 So.3d at 655. (emphasis added.)
Similarly, in Rapalo-Alfaro; this Court recognized that,- under La. R.S. 22:1295(l)(a)(ii), “a properly completed uninsured motorist coverage form where the signatory rejected coverage creates a rebuttable presumption that the insured knowingly rejected uninsured motorist *89 coverage.” Id., 16-0209, p. 10, 173 So.3d at 1180. The Court then noted that, because the insurer met its burden of proof that the insured’s electronic signature was presumed valid, the burden then shifted to the plaintiff to show a genuine issue of material fact. Finding that the. plaintiff, who filed no affidavits or other documents disputing that.the UM rejection was executed by him,[8] failed to make such a showing, the Court held: . ■■
[Electronic signatures under Louisiana’s Electronic Transactions Act are given the same legal effect as all other types of signatures. Lloyds, accordingly, has no additional burden of proof with respect to Mr. Rapalo-Alfaro’s electronic signature unless he specifically denies signing the uninsured motorist waiver form. The matter in this case, howéver, is not in genuine dispute because Mr. Rapalo-Alfaro has not denied — by way of allegation in his petitions, sworn testimony, or notarized affidavit — that the electronic signature on the uninsured’ motorist form is attributable to him.
Id., 16-0209, pp. 15-16, 173 So.3d at 1182-83. (emphasis added.)
hsBoth Bonck and Rapalo-Alfaro make clear that signed UM rejection forms are presumed to be valid, whether the signatures are in handwriting or completed electronically. However, when an insured disputes the validity of those signatures, the insurer cannot simply rest'on the form itself, and on the legal presumption that the insured knowingly rejected UM coverage by signing the form. Rather, the insured’s denial creates a fact issue "which must; be reviewed by the insurer who must then demonstrate thát the insured did, in fact, execute the UM rejection form.
As we found in Bonck, the affidavits submitted by Affirmative and National merely “state[] what the UMBI form shows.” There are no specific details as to either Affirmative’s or National’s practices and procedures or any specific information as to how the UM rejection forms, in this case, were confected. While we agree .with this Court’s discussion in Bonck that Ms. Weddborn’s affidavits are self-serving, each creates a genuine issue of material fact. ■
First, with respect to the affidavit in opposition to Affirmative’s motion, Ms. Weddborn specifically stated that she met with an agent to apply for insurance and never applied for the policy on line. Second, Ms. Weddborn attested to the fact that she filled out the application by hand, and not electronically, and never gave anyone authority to sign for her or to reject UM coverage for her. When confronted with these statements, Affirmative took no action to investigate Ms. Weddborn’s contentions or otherwise challenge Ms. Wedd-born’s credibility. We recognize that Ms. Weddborn produced the affidavit on the date of the hearing; however, Affirmative could have asked for a continuance of the hearing (once the trial court, in its discretion, indicated it would allow the filing of the affidavit) so as to conduct discovery on these issues."
| ^Second, as concerns the affidavit submitted in opposition to National’s motion, we note that it bears a hand-written signature. However, Ms. Weddborn’s sworn affidavit, by which she denied signing the form, however questionable that denial may be, does "create a fact issue which National’s" affidavit does not overcome. Moreover, Ms. Weddborn’s affidavit essentially suggests that the" UM rejection form was éither fraudulently executed and/or *90 was forged; indeed, she explicitly states that the form “was completed by someone other than [her] ... making [it] ... invalid.” These allegations are serious and should have prompted National to take some measures to rebut them.
Based on the foregoing, we are constrained to follow Bonek and Rapalo-Alfa-ro and we find that the trial court erred in granting summary judgment as to both Affirmative's and National’s motions for summary judgment on the basis of the UM selection forms.

Automatic termination clause in National’s policy

As its second argument, National maintains that its policy was no longer in effect by virtue of an automatic' termination clause in its policy. In its brief argument (basically, that the language of this clause is “clear and unambiguous”), National submits that the policy “did not provide any coverage whatsoever to plaintiff on the date of the subject accident.” The clause at issue provides:
Automatic termination — If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer. If you obtain other insurance on “your covered auto”, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.
J^National takes the position that, when Ms. Weddborn obtained the policy of insurance from Affirmative on December 14, 2012, .its pplicy, obtained on November 4, 2012, automatically terminated. National cites no case law which has interpreted such a clause; indeed, there are no cases in Louisiana which have addressed this issue.
We recognize that some jurisdictions have upheld the enforceability of an automatic términation clause based on an insured’s obtaining another policy of insurance. See, e.g., Fid. & Cas. Co. of New York v. State Farm Fire & Cas. Co., 947 So.2d 1194 (Fla.Dist.Ct.App.2007); Ohio Farmers Ins. Co. v. Estate of Brace, 116 Ohio App.3d 395, 688 N.E.2d 298 (1997); Timock v. Bolz, 115 Ohio App.3d 283, 685 N.E.2d 285 (1996). In each of these cases, the insurance policies at issue had specific automatic termination clauses dealing solely 'with the termination of a policy upon the purchase of another policy.
In this matter, however, the automatic termination clause is mainly concerned with the renewal or continuation of a policy; the inclusion of language on the policy’s termination resulting from an insured’s obtaining other insurance is essentially, an afterthought. In a case with remarkably similar issues, a California court refused to enforce an automatic termination clause which had the same language as that contained in the National’s policy. We find the court’s discussion compelling. First, the court found the termination provision to not be conspicuous:
An exclusionary clause must be “positioned in a place and printed in a form which would attract a reader’s attention.” Ponder v. Blue Cross of S. Cal., 145 Cal.App.3d 709, 719, 193. Cal.Rptr. 632 [ (1983) ]. The provision at issue is the second paragraph of a two-part subsection denominated “Automatic Termination” of the “Termination” section which is included in “Part F — General Provisions.” The first paragraph, of the “Automatic Termination” section provides for automatic | ^termination at the end of the policy period if the insured *91 does not accept an offer of renewal or pay the renewal premium when due. While neither party contends this provision to be applicable to this case, there is no clear demarcation to indicate that the second paragraph contains a separate and distinct provision for automatic termination. Specifically, the second paragraph is not separated from the previous paragraph by any subheading, lettering or numbering to distinguish it from the foregoing paragraph. Each and every exclusion in the policy, on the other hand, is lettered or numbered and separated from each other by an empty line.
Motors Ins. Corp. v. Bodie, 770 F.Supp. 547, 549 (E.D.Cal.1991).
Next, the court found the term “similar insurance” to be ambiguous:
The provision only operates to terminate “similar insurance provided by this policy” in the event that “you [the insured] obtain other insurance on ‘your covered auto.’ ” “Similar” is not defined by the policy and may be used in English to mean the “same” or “identical” though it is defined as “showing some resemblance; related in appearance or nature; alike though not identical.” American Heritage Dictionary 1206 (1979).l It is difficult to imagine being called upon to interpret a more imprecise term. This inherent vagueness fully justifies the conclusion that the term “similar” is ambiguous. Under applicable rules of interpretation, therefore, the court cannot interpret “similar” to mean “showing some resemblance” for that would be to resolve the ambiguity in favor of the insurer.
Id., 770 F.Supp. at 550. The Motors court noted that “[t]he rules require the court to resolve the ambiguity in favor of The insured and interpret the provision ‘in its most inclusive sense, for the benefit of the insured.’” Id. See, Johnson v. Orleans Par. Sch. Bd., 06-1223, p. 21 (La.App. 4 Cir. 1/30/08), 975 So.2d 698, 713 (an “ambiguity in the policy must be resolved in favor of the insured”).
In addition to the foregoing discussion, with which we agree, we note that, in this case, National’s policy contains a specific “Cancellation” section which provides the grounds for the cancellation of the policy. Those grounds do not 117include the cancellation of the policy because of an insured’s obtaining other insurance. Rather, the cancellation section states that cancellation of a policy “after the first sixty days may be done only if it is based on one of’ several grounds, (emphasis added.) Those grounds áre limited to:
(a) Nonpayment of premium; '
(b) The suspension' or revocation of the named insured’s driver’s license or motor vehicle registration;1-'
(c) Fraud or material misrepresentation in the presentation of a claim;
(d) Non-receipt of an application for in- . surance in which a valid binder has been issued; and
(e) Any other reason allowed by Louisiana law.
None of the enumerated grounds for the termination of a policy are here. The “catch-all” phrase — “any other reason allowed by -Louisiana law” — is inapplicable as well, as there is no statute specifically allowing an insurer to cancel a policy when an insured obtains another policy on the same vehicle. In fact, La. R.S. 23:1226 B(l) provides that “a notice of cancellation of a policy shall be effective only if it is based on one or more” of four reasons— the identical grounds as set forth in paragraphs (a) through (d) of National’s cancellation provisions.
We find a decision of a Texas court to likewise be compelling. In Travelers *92 Indem. Co. of Rhode Island v. Lucas, 678 S.W.2d 732, 734 (Tex.App.1984), the court found that a clause providing that the policy would terminate on the effective date of any other automobile insurance policy with respect to any automobile designated in both policies did not terminate the first policy on effective date of second policy. The court stated: •
... [T]he provision is placed in the policy under . the heading “Renewal.” Separate headings concern cancellation, either by the insured or the company. 1 ^Cancellation by the company is permitted only for. two stated reasons, neither of which is involved here. An additional provision entitled “Other Insurance” limits the amount of recovery when the, insured has other insurance covering the loss.[9] Construing the contract as a whole, we conclude that the clause in question was intended not to provide for automatic termination, but to allow the company to elect not to renew the policy at the end of the policy term, even without notice to the insured, if the'insured is covered by another policy. To hold otherwise would produce an unreasonable result and would tend to render other provisions in the policy, such as the “Other Insurance” provision, , meaningless. -
Accordingly, we find that the automatic termination clause in National’s policy did not operate to terminate Ms. Weddborn’s policy when she obtained the Affirmative policy.
CONCLUSIÓN
For the reasons set forth more fully herein, we reverse the trial court’s March 13, 2015 judgment granting summary judgment in favor of Affirmative Insurance Company and the trial court’s June 16, 2015 judgment granting summary judgment in favor of National Automotive Insurance Company. We remand this matter to the trial court for further proceedings.
REVERSED
TOBIAS, J., concurs.

. On March 3, 2016, Affirmative filed a motion to supplement the record with a copy of a Verified Complaint for Liquidation with a Finding of Insolvency which was filed in the Circuit Court of Cook County, Illinois. On this basis, Affirmative sought a stay of these proceedings. Because the record does not demonstrate that an order of liquidation has been issued, a stay of this matter would be premature. See, e.g., Christen v. Al Copeland Enterprises, Inc., 93-1170, 635 So.2d 596, 598 (La.App. 3 Cir. 4/6/94) ("an order placing a company in liquidation” ... stay[s] all suits and seizures previously filed); State ex rel. Guste v. ALIC Corp., 595 So.2d 797, 799 (La. App. 2nd Cir. 1992) ("Louisiana’s scheme for liquidating insolvent insurers is very similar to proceedings in bankruptcy.... Unlike bankruptcy proceedings, ... wherein all proceedings involving the debtor are automatically stayed by operation of law, with certain enumerated exceptions, 11 U.S.C. § 362(a)(4), the state district court wherein the receivership proceedings are initiated has the authority to issue broad injunctions to insure that the integrity of the receivership proceeding is maintained. LSA-R.S. 22:734”).

. The Petition for Damages does not state' on which street the accident took place, identify the vehicle involved in the accident or identify the driver of the vehicle at the time of the accident; rather, it simply states that the four parties were “occupants of a vehicle which was traveling near the intersection....”

. We note that the motion for appeal was filed. prior to the rendition of the written judgment. The order granting the appeal, however, was entered after the written judgment. Ordinarily, appeals may be taken only from a written, signed judgment. See, La. C.C.Pr. art. 1911 A, B, respectively, ("every final judgment shall contain the typewritten or printed name of the judge and be signed by the judge”; "no appeal may be taken from a final judgment until the requirement of this Article has been fulfilled”). However, La. C.C.Pr. art. 2087 D and our jurisprudence reflect that an appeal taken from a prematurely filed motion for appeal, or order granting an appeal, will be considered timely once the final judgment has been signed. See, Overmier v. Traylor, 475 So.2d 1094, 1094-95 (La.1985) ("once the final judgment has been signed, any previously existing defect has been cured, and there is no useful purpose in dismissing the otherwise valid appeal"); Oreman v. Oreman, 07-296, p. 18 (La.App. 5 Cir. 10/30/07), 971 So.2d 1149, 1160 (while “appeal was premature and subject to dismissal prior to the trial court’s signing of the judgment on August 24, 2007,[, because] ... that judgment has now been signed, the appeal is no longer premature”); Davis v. Witt, 01-894, p. 6 (La.App. 3 Cir. 8/1/01), 796 So.2d 38, 42 ("while this appeal was subject to dismissal as premature prior to the signing of the written judgment on April 16, 2001, .., the jurisprudence has held that this prematurity is cured when the judgment has been subsequently signed”).

. UMBI stands for "Uninsured/Underinsured Motorist Bodily Injury Coverage.”

, We note that both the signature line and the ' line where the name is to be printed both contain a handwritten printed name. We do not find that the lack of a "signature,” that is, one that is written in cursive, to invalidate the signature. See, e.g., Rainey v. Entergy Gulf States, Inc., 09-572, p. 15 (La.3/16/10), 35 So.3d 215, 225 ("where a statute requires a signature,-a printed or typed 'signature' is sufficient provided the signature was authorized and intended to constitute the signature”); Reno v. Travelers Home & Marine Ins. Co., 02-2637, p. 5 (La.App. 1 Cir. 11/7/03), 867 So.2d 751, 754 ([t]he fact that a signature is printed by hand father than written in *86 cursive does not indicate a lack of genuineness”).

. Affirmative also attached an affidavit of Jenna Laughlin, a representative of LIFCO, LLC, with whom Ms. Weddborn entered into a Consumer Insurance Premium Finance Agreement at the time that she applied for insurance with Affirmative. Ms. Laughlin's affidavit merely attests to the fact that she reviewed LIFCO’s records and determined that Ms. Weddborn regularly made payments to LIFCO for the Affirmative policy.

. Affirmative argues that Ms. Weddborn's affidavit was not signed and therefore, has no effect. Affirmative also maintains that, because of the untimely filing of Ms. Wedd-born’s opposition memorandum, the affidavit should not be considered. In fact, two days before the hearing, Affirmative moved to strike both the opposition memorandum and the affidavit. The record before us'contains a signed affidavit, attached to Ms. Weddborn’s opposition memorandum, although the affidavit discusses the National UM selection form, rather than the Affirmative UM selection form. The Affirmative UM selection form was presented to the trial court at the hearing on Affirmative’s motion for summary judgment, at which time, the trial court allowed the opposition memorandum and the affidavit to be accepted into the record, even though both were untimely. We agree that the filing was untimely under La. C.C.Pr. art. 966 B(l), which incorporates by reference District Court Rule 9.9. Under subpart (c) of Rule 9.9, opposition memoranda must be filed at least eight calendar days before a hearing! (This eight-day time frame has been extended by amendments to La. C.C.P. art. 966, effective January 1, 2016). The Louisiana Supreme Court, in Buggage v. Volks Constructors, 06-0175 (La.5/5/06), 928 So.2d 536, 536 (per curiam), noted that the time limitations set forth in Article 966 are mandatory; however, the Court's indication that “affidavits not timely filed can be ruled inadmissible and properly excluded,” Id. (emphasis added.) Buggage has been interpreted by the courts to allow the trial court discretion in determining whether to allow late-filed oppositions and affidavits. See, e.g., Mahoney v. E. Carroll Par. Police Jury, 47,494 (La.App. 2 Cir. 9/26/12), 105 So.3d 144, 152; James Constr. Group, L.L.C. v. State ex rel. Dep’t of Transp. and Dev., 07-225 (La.App. 1 Cir. 11/2/07), 977 So.2d 989; Savoie v. Savoie, 03-893, 03-894 (La.App. 5 Cir. 12/30/03), 864 So.2d 742. Here, there is no prejudice to Affirmative given that, in its motion, it anticipated the very argument asserted by Ms, Weddborn in opposition to its motion. See, James Const. Grp., L.L.C., 07-225, p. 16, 977 So.2d at 999 ("district courts'have discretion, absent prejudice, to consider affidavits served after the time prescribed by La. C.C.P. art. 966 B”).

. The-plaintiff attacked the validity of the UM rejection form on legal grounds." :

. The National policy in this case, too, has an "other insurance” provision which states: "If there is other insurance available against a loss covered by this policy [National] shall not be liable under this policy for a greater por- - tion of such loss than the applicable limit of the liability stated in the declarations bear [to] the total applicable limit of liability of all valid and collectible insurance.”