Judge Roland L. Belsome
| ¶ Plaintiffs appeal summary judgment granted in favor of Defendant, Affirmative Insurance Company. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
This matter arises out of a motor vehicle accident that occurred on August 21, 2014. Plaintiff, Brayan Orellana, was operating a 2010 Dodge Challenger when the vehicle was struck by a 1996 Jeep Cherokee or other white SUV operated by Tory Lewis or John Doe. The vehicle that struck the Dodge Challenger fled the scene of the accident. Plaintiffs Gladys Torres-Ortega, the owner of the Dodge Challenger and the holder of the insurance policy at issue in this case, and Damaris Andino were passengers in the vehicle driven by Mr. Orellana.
Plaintiffs filed suit on August 31, 2015, against John Doe, Tory Lewis, and the alleged uninsured/underinsured motorist insurer for Ms. Torres-Ortega, Affirmative Insurance Company (“Affirmative”), seeking to recover for the injuries and damages allegedly sustained in the collision.
|,,Affirmative filed a Motion for Summary Judgment on the grounds that there was no uninsured/underinsured motorist (“UM”) coverage on the vehicle because Ms. Torres-Ortega rejected UM coverage when she executed her policy. The motion was heard on January 28, 2016, and the trial court subsequently granted the motion and dismissed all claims against Affirmative. Plaintiffs timely appealed the judgment.
On March 24, 2016, during the pendency of this appeal, Affirmative was placed into insolvency by virtue of an Order of Liquidation. As a result, Louisiana Insurance Guaranty Association (“LIGA”) became responsible for claims pending against Affir *991 mative pursuant to La. R.S. 22:2055(6), and thus intervened in this action.
STANDARD OF REVIEW
“Motions for summary judgment are reviewed de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.” [1] At all times pertinent to this matter, La. G.C.P. Art. 966 B(2) provided that a motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” The determination of whether a fact is material turns on the applicable substantive law.[2]
|sOn motions for summary judgment, the burden of proof remains with the movant; however, if the moving party will not bear the burden of proof on the issue at trial he must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim.[3] The burden then shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.[4]
The trial court cannot make credibility determinations on a motion for summary judgment, nor may it consider the merits of the issues raised.[5] Further, the weighing of conflicting evidence has no place in summary judgment procedure.[6] “Despite the legislative mandate that summary judgments are favored, any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.”[7]
LAW AND DISCUSSION
In Louisiana, UM coverage is determined not only by contractual provisions, but also by statute.[8] UM coverage “is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected.”[9] “The insurer bears the burden of proof that a rejection of UM coverage or a selection of lower limits has been legally | ¿perfected.”[10] “A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.”[11]
Plaintiffs contend that Ms. Torres-Ortega did not agree to waive UM coverage and did not execute the UM selection form attached to the Affirmative insurance policy. In opposition to summary judg *992 ment, Ms. Torres-Ortega submitted an affidavit to that effect. She maintains that the affidavit creates a genuine issue of material fact, and therefore summary judgment is inappropriate. We agree.
In support of the motion for summary judgment, Affirmative attached the UM selection form allegedly executed by Ms. Torres-Ortega. The form contains an electronic signature dated August 2, 2014, which reads “Geladys Ortega.” The typed initials “G.O.” are next to the selection rejecting UM coverage. Affirmative also presented an affidavit by Jose Sergio Vidal, an authorized representative for Affirmative.[12] Mr. Vidal’s affidavit attested to the authenticity of the copy of the insurance policy and declarations page as well as the UM selection form. He also attested that Affirmative did not provide UM coverage to Ms. Torres-Ortega.
In opposition, Ms. Torres-Ortega submitted an affidavit in which she argued that the UM selection form was fraudulently completed. She attested that she never told the insurance agent for Affirmative that she wanted to reject UM coverage, did | ^not give anyone authority to reject UM coverage on her behalf, that Affirmative did not discuss UM coverage with her, that she cannot read the Affirmative documents because they are in English, that nobody translated the documents for her or read them to her, that she did not conduct any electronic transactions with Affirmative, that did not sign and initial the relevant UM selection form, and that her name and initials are misspelled on the relevant UM selection form.[13] Ms. Torres-Ortega maintains that this affidavit creates a genuine issue of material fact that precludes summary judgment.
In a recent case, Weddbom v. Doe, this Court considered a nearly identical set of facts, and found that an affidavit attesting that an insured person did not sign the relevant UM form was sufficient to create a genuine issue of material fact regarding the knowing and voluntary waiver , of UM coverage.[14]
In Weddbom, the insured plaintiffs vehicle was struck by another vehicle, and the driver of the other vehicle fled the scene.[15] The plaintiffs filed suit against two insurance carriers, Affirmative and National Automotive Insurance Company (“National”), alleging that each had issued an insurance policy that included UM coverage.[16] Both insurers filed motions for summary judgment, claiming that the insured, Andrea Weddborn, had rejected UM coverage on her vehicle.[17] Both insurers attached UM selection forms completed by Ms. Weddborn that rejected RUM coverage.[18] Ms. Weddborn’s electronic initials and signature were on the Affirmative form, while the National form contained a handwritten signature and initials.[19] Affirmative also attached an affidavit executed *993 by an authorized representative, who attested that Affirmative’s records indicated that Ms. Weddborn’s insurance policy did not provide UM coverage, that she had never paid any premiums for UM coverage, and that she never made any changes to the coverage under her policy.[20] National attached an affidavit executed by an underwriting manager who attested to the authenticity of the policy and the receipt of a UM rejection form from Ms. Wedd-born.[21]
In opposition, Ms. Weddborn submitted affidavits in which she denied executing either of the two UM selection forms.[22] With respect to the Affirmative form, she attested that she completed all insurance forms in person and not online via electronic signature, and that she did not give anyone else the authority to sign any insurance documents on her behalf.[23] Regarding the National form, Ms. Weddborn attested that the handwritten initials and signature on the form were not authentic, and attached medical documents that reflected her genuine signature, which she argued did not match the signatures on the insurance forms.[24]
The Court stated that while an electronic signature on a UM rejection form is valid, “the production of a UM rejection form, alone, is insufficient to establish 17that an insurer has borne its burden of proof on a motion for summary judgment, when there is a sworn statement by an insured denying that she executed the form.”[25] The Court found that Ms. Wedd-born’s affidavits disputing the validity of the signatures on the UM forms created genuine issues of material fact, and accordingly reversed summary judgment in favor of defendants and remanded the matter to the trial court.[26]
In this case, the affidavit submitted by Ms. Torres-Ortega creates a genuine issue of material fact regarding whether she waived UM coverage, which was sufficient to overcome summary judgment. Accordingly, we reverse the trial court’s judgment granting summary judgment in favor of Affirmative Insurance Company and remand this matter to the trial court for further proceedings.
REVERSED AND REMANDED

. Weddborn v. Doe, 2015-1088, p. 4 (La.App. 4 Cir. 5/4/16), 194 So.3d 80, 84.

. Smith v. Our Lady of the Lake Hosp,, Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.

. La. C.C.P. Art. 966 C(2).

. Id.

. Grant v. Am. Sugar Ref., Inc., 2006-1180, pp. 3-4 (La.App. 4 Cir. 1/31/07), 952 So.2d 746, 748.

. Id.

. Bridgewater v. New Orleans Reg'l Transit Auth., 2015-0922, pp. 5-6 (La.App. 4 Cir. 3/9/16), 190 So.3d 408, 412, writ denied, 2016-0632 (La. 5/20/16), 191 So.3d 1071).

. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). See also La. R.S. 22:1295.

. Duncan v. U.S.A.A. Ins. Co., 2006-363, p. 4 (La. 11/29/06), 950 So.2d 544, 547.

. Daigle v. Authement, 96-1662, p. 3 (La. 4/8/97), 691 So.2d 1213, 1214.

. La. R.S. 22:1295(1)(a)(ii).

. It is of note that Mr. Vidal was not the Affirmative agent who is named as the sales agent on the insurance documents presented by Affirmative. According to the insurance documents, Ms. Torres-Ortega’s sales person was Guillermo Robles, who did not complete an affidavit.

. She asserts that she initials documents "G.T.” for Gladys Torres.

. Weddborn, 194 So.3d at 89.

. Id. at 83.

. Id.

. Id. National also argued that under the terms of its policy, the plaintiff’s policy was terminated when she procured a policy with Affirmative.

. Id. at 85.

. Id.

. Id. at 86.

. Id.

. Id.

. Id.

. Id. at 86-87.

. Id. at 88.

. Id. at 89.