Kenneth W. DeJean, Adam R. Credeur, LAW OFFICE OF KENNETH W. DEJEAN, 417 West University Avenue, P.O. Box 4325, Lafayette, LA 70502, COUNSEL FOR PLAINTIFFS/APPELLANTS
James P. Waldron, Peter E. Sperling, FRILOT L.L.C., 1100 Poydras Street, Suite 3700, New Orleans, LA 70163-3600, COUNSEL FOR DEFENDANT/APPELLEE
(Court composed of Chief Judge James F. McKay, III, Judge Roland L. Belsome, Judge Paula A. Brown )
Judge Roland L. Belsome *971 In this medical malpractice and general negligence suit, the Plaintiffs, Benton Cason Delahoussaye, III (Mr. Delahoussay) and Amy Delahoussaye, individually and on behalf of their minor child, Benton Cason Delahoussaye, IV, appeal the trial court's granting of partial summary judgment in favor of the Defendant, Tulane University Hospital and Clinic (Tulane Hospital), on the medical malpractice claims. For the following reasons, the trial court's ruling is reversed and remanded.
FACTS AND PROCEDURAL HISTORY
This tort suit arises from claims of abandonment of care during Hurricane Katrina. The undisputed facts reveal that before Hurricane Katrina, Mr. Delahoussaye, who was thirty-six years old at the time, was diagnosed with osteosarcoma of the left distal tibia. As a result, he began chemotherapy. On August 15, 2005, an orthopedic oncologist performed a resection/reconstruction of the left distal tibia at Tulane Hospital. After the surgery, Mr. Delahoussaye remained in the hospital, where he was treated with antibiotics, irrigation, debridement and wound vac[1] therapy for infection of the left distal tibia flap. He was later scheduled to have the hardware removed from his leg on August 27, 2005. However, the scheduled surgery was not performed.
Due to the hurricane, the hospital and Mr. Delahoussaye's wound vac lost power. He was eventually airlifted by helicopter and admitted to Southwest Medical Center on August 31, 2005. The medical records from Southwest Medical Center reflect that Mr. Delahoussaye had a history of infection underneath the rotational flap.[2] There, he was treated by Dr. Bryan Frentz for the infection of the tibia flap with antibiotics, irrigation and debridement. At that time, Mr. Delahoussaye's wound was partially closed and he was again treated, unsuccessfully, with wound vac therapy. Later, on June 26, 2007, after further medical treatment, he underwent a below-knee amputation of his left leg.
As a result of his treatment at Tulane Hospital during the Hurricane, the Plaintiffs[3] filed a Petition for Damages asserting eighteen negligence claims:
*972 (a) Failure to properly supervise and treat post surgical conditions;
(b) Failure to make provisions for safe and functional auxiliary power during an emergency;
(c) Failure to properly staff the hospital and personnel during an emergency;
(d) Failure to develop proper protocol for emergencies including treatment of existing patients, provisions for medications, staffing and proper emergency power;
(e) Failure to develop and implement a functional communication system among staff and patients for emergencies;
(f) Failure to design and implement emergency protocol for staff, patients and personnel to assure continued care and treatment;
(g) Failure to properly monitor the post-surgical care and treatment of Benton Cason Delahoussaye, III;
(h) Failure to develop and implement a protocol for evacuation of patients during an emergency;
(i) Failure to develop and implement a protocol for continued assessment and treatment of patients during an emergency;
(j) Failure to have auxiliary power for wound care during an emergency;
(k) Failure to have provisions for availability of medicines, antibiotics, wound care, bandages, etc. during an emergency;
(l) Failure to take meaningful preparation for an emergency such as was presented as a result of Hurricane Katrina;
(m) Failure to develop a protocol for patient follow-up during and after an emergency;
(n) Failure to properly evaluate the success of surgery and post surgery treatment, care and prognosis;
(o) Failure to establish a hospital communication system to patients in the hospital during an emergency;
(p) Failure to get informed consent for care and treatment or lack thereof;
(q) Failure to inform patients of emergency conditions; and
(r) Failure to provide transportation for patients in an emergency.
In response, the Defendant filed an exception of prematurity averring that the Plaintiffs' claims are malpractice claims, which must be first tried before a medical review panel.
After a hearing, the trial court partially granted the exception as to all of the claims, except for subpart (b), which concerned the claim for failure to make provisions for safe and functional auxiliary power during an emergency. This Court partially granted the Plaintiffs' application for supervisory writs, finding that claims (e), (o) and (q) were negligence claims. The Louisiana Supreme Court denied the Plaintiffs' writ application for supervisory review.
After a medical review panel found that the evidence did not establish a breach in the standard of care, the Plaintiffs filed a second Petition for Damages. Once the second petition was consolidated with the first petition, the Defendant filed a partial motion for summary judgment on the fourteen medical malpractice claims. The trial court initially denied the motion for partial summary judgment. However, it granted the Defendant's re-urged motion for partial summary judgment and dismissed the medical malpractice claims[4] with prejudice.
*973 [5] The judgment was designated as a final judgment by the trial court and this appeal followed.
DISCUSSION
On appeal, the Plaintiffs aver that the trial court erred in granting partial summary judgment on the medical malpractice claims. The only issue before this Court is whether there are genuine issues of material fact that preclude judgment as a matter of law.
"Motions for summary judgment are reviewed de novo 'under the same criteria governing the trial court's consideration of whether summary judgment is appropriate.' " Weddborn v. Doe , 15-1088, p. 4 (La. App. 4 Cir. 5/4/16), 194 So.3d 80, 84 (internal quotation omitted). La. C.C.P. art. 966 A(3) provides that a motion for summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."[6] The determination of whether a fact is material turns on the applicable substantive law. Smith v. Our Lady of the Lake Hosp., Inc. , 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.
On motions for summary judgment, the burden of proof remains with the movant; however, if the moving party will not bear the burden of proof on the issue at trial he must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.P. art. 966 D(1). The burden then shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id .
The motion for partial summary judgment at issue here arose from medical malpractice claims. "To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794." Samaha v. Rau , 07-1726, pp. 5-6 (La. 2/26/08), 977 So.2d 880, 883-84. Expert testimony is generally required to establish the applicable standard of care and breach of that standard. Id ., 07-1726, pp. 5-6, 977 So.2d at 884.
In this case, the Defendant will not bear the burden of proof at trial; therefore, it need only point out that there is an absence of factual support for one or more elements essential to the Plaintiff's claim to support that there is no genuine issue of material fact. See Id ., 07-1726, 977 So.2d at 884. The Defendant met its initial burden of proof on the re-urged partial motion for summary judgment based on the panel's opinion that there was no breach in the applicable standard of care, which is essential to the Plaintiffs' claim. In addition, the Defendant admitted excerpts from the deposition of Dr. Frentz, who testified that he did not believe there was a breach in the standard of care in the treatment of Mr. Delahoussaye. Thus, the burden shifted to the Plaintiffs.
In their opposition to the Defendant's re-urged motion for partial summary judgment, *974 the Plaintiffs admitted the certified medical records from Southwest Medical Center, the affidavit and deposition excerpts of James Phillippe, an expert in hospital administration, and the affidavit and deposition excerpts from the deposition of Mr. Delahoussaye's treating physician at Southwest Medical Center, Dr. Frentz.
The Plaintiffs argue that they have produced sufficient expert testimony to support their medical malpractice claims against the Defendant. We agree. This suit is against the hospital, not a treating physician. It concerns whether there were breaches in the standard of care relative to the effective creation and implementation of administrative policies and emergency procedures, which in turn affected the individual treatment of Mr. Delahoussaye. As such, the clinical and administrative claims overlap.
While Mr. Phillippe testified as to the administrative standards of care and breaches, Dr. Frentz testified as to the clinical standard of care. In particular, Mr. Phillippe opined that Tulane Hospital had obligations to establish and implement proper emergency preparedness protocols for the hospital. He further opined that Tulane Hospital breached the standard of care regarding emergency preparedness. In particular, he found that Tulane Hospital did not develop and implement "sufficient plans for dealing with emergencies." Among other breaches, he specifically noted breaches in duties to provide: adequate staffing, adequate provisions for the safe and functional use of auxiliary power,[7] and an adequate evacuation plan during the hurricane.
As to the clinical standards of care, Dr. Frentz testified that the two remedies to treat Mr. Delahoussaye's infection were to use a wound vac or to manually conduct wound care. He further opined that without the wound vac for five days or manual wound care, in the alternative, Mr. Delahoussaye did not receive "optimal" treatment, causing the infection to worsen and reducing the likelihood that the reconstruction would be successful.
While Dr. Frentz overtly testified that he did not find that Tulane Hospital breached the standard of care in their treatment of Mr. Delahoussaye, Mr. Phillippe's affidavit and deposition testimony established the necessary administrative breaches in the standard of care. These administrative breaches, according to Dr. Frentz, impeded Mr. Delahoussaye's clinical treatment, causing his infection to worsen and detrimentally affected the success of his reconstruction surgery, which ultimately resulted in the loss of his leg.
Since there are no individual malpractice claims in this case, the clinical claims arise from the administrative breaches. Under these peculiar circumstances and when considering the totality of the evidence presented by both Mr. Phillippe and Dr. Frentz combined, the Plaintiffs have sufficiently established the necessary elements of their malpractice claims. For this reason, we find that he trial court erred in granting the Defendant's motion for partial summary judgment.
CONCLUSION
Accordingly, we reverse the trial court's ruling granting the defendant's motion for partial summary judgment and remand this matter for further proceedings.

"Wound vac" is a reference to the vacuum-assisted closure of a wound, which is a type of therapy to help wounds heal. VACUUM ASSISTED CLOSURE, JOHNS HOPKINS HEALTH LIBRARY, https://www.hopkinsmedicine.org/healthlibrary/test_procedures/other/vacuum-assisted_closure_of_a_wound_135,381(last visited November 9, 2018).

There is a dispute as to the manner and frequency of the wound treatment. While the records from Southwest Medical Center indicate that the wound vac was not changed for five days, the records from Tulane Hospital, while difficult to decipher, suggest that the wound vac lost power and later became operational only to lose power again. It is also unclear as to whether the wound was manually dressed during that time. The conflict in the evidence creates a genuine issue of material fact.

Mr. Delahoussaye's wife and child filed claims for loss of consortium.

The claims that were dismissed are subparts (a), (c), (d), (f) - (n), (p) and (r).

Judge Tiffany Chase initially heard and denied the Defendant's motion for partial summary judgment. After Judge Chase was elected to the Fourth Circuit Court of Appeal, Judge Henry Julien was appointed Pro Tempore. Judge Julien heard the re-urged motion for partial summary judgment.

"The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966.

Notably, the trial court found that the failure to provide auxiliary power was a negligence claim.