1 {.WALTER J. ROTHSCHILD, Judge.
This ease arises from an accident that occurred on May 6, 2002, while the claimant, Brian Auxilien, and a co-worker, George Manzur, were working for Osborn Painting, Inc. (“Osborn”). Mr. Auxilien and Mr. Manzur were pressure washing a house, and they were using an extension ladder to perform the work. Mr. Auxilien placed the ladder on a walkway and when he climbed the ladder, it slid on the walkway, causing Mr. Auxilien to fall to the ground and suffer serious injuries.
Mr. Auxilien was taken to East Jefferson General Hospital for treatment. He submitted a urine sample to Mr. Sloan Headrick, who is a DOT certified collection technician employed by B.A.L. & Associates, and a post-accident drug screen was *971 | aperformed.[1] It is undisputed that Mr. Auxilien tested positive for marijuana metabolites, at a level of 43 nanograms per milliliter.
After the accident, Mr. Auxilien began receiving worker’s compensation benefits. On March 19, 2003, the employer, Osborn Painting, Inc., filed a Disputed Claim for Compensation, asserting that '“[tjhis Employee is not entitled to worker’s compensation benefits as a result of his drug intoxication at the time of his accident and forfeiture of benefits pursuant to Section 1081 of the Louisiana Workers’ Compensation Act.” On August 8, 2003, Osborn filed a Supplemental and Amended Claim Form, contending, that Mr. Auxilien made willful misrepresentations in his deposition testimony and, therefore, he forfeited his right to worker’s compensation benefits pursuant to LSA-R.S. 23:1208. Mr. Auxi-lien filed an Answer to Disputed Claim for Compensation, denying that he was intoxicated at the time of the accident, arguing that the drug test results were not admissible, and, alternatively, that even if he was intoxicated, it was not a contributing cause of the accident. Further, he filed an Answer to the Supplemental and Amended Claim denying the employer’s allegations.
On December 30, 2003, Osborn filed a Motion for Summary Judgment, seeking dismissal of Mr. Auxilien’s continued claims for benefits on the grounds that he made willful misrepresentations in violation of LSA-R.S. 23:1208. Osborn argues that Mr. Auxilien lied about his pre-acci-dent drug usage and the circumstances surrounding the positive drug test that was taken shortly after this accident.
On January 15, 2004, Mr. Auxilien filed a Supplemental and Amended Answer asserting that Ben Osborn violated LSA-R.S. 23:1208 by making false statements and willful misrepresentations for the purpose of defeating benefits or | ¿payments to Mr. Auxilien. On January 29, 2004, Mr. Auxilien filed a Motion for Summary Judgment asserting that Osborn’s intoxication defense should be dismissed, because the drug test results are inadmissible and therefore, there is no evidence to show that he was intoxicated at the time of the accident. He further argues that Osborn’s claims that Mr. Auxilien made willful misrepresentations ■ in violation of LSA-R.S. 23:1208 were based on the inadmissible drug test and should be dismissed.
On February 12, 2004, a. hearing was held on the Motions for Summary Judgment filed by both Osborn and Mr. Auxi-lien.[2] On February 23, 2004, the trial court signed a judgment granting Osborn’s Motion for Summary Judgment, denying Mr. Auxilien’s Motion for Summary Judgment, and dismissing Mr. Auxilien’s claims for worker’s compensation benefits.
On February 23, 2004, Osborn filed an Answer to Mr. Auxilien’s Reconventional Demand,[3] denying that Mr. Osborn made *972 willful misrepresentations in violation of LSA-R.S. 23:1208. Thereafter, on May-18, 2004, Osborn filed a Motion for Summary Judgment with respect to the claims in Mr. Auxilien’s reconventional demand. This motion came for hearing on June 18, 2004. On June 21, 2004, the trial court signed a judgment granting Osborn’s Motion for Summary Judgment and dismissing Mr. Auxilien’s reconventional demand. On July 15, 2004, Mr. Auxilien filed a Notice of Appeal, seeking review of the June 21, 2004 judgment, and the trial court granted his request for an appeal.

DISCUSSION

Is On appeal, Mr. Auxilien contends that the trial court erred in granting Osborn’s Motion for Summary Judgment as to Mr. Auxilien’s reconventional demand, which judgment was signed by the trial court on June 21, 2004. Mr. Auxilien also asserts that the trial court erred in granting Osborn’s Motion for Summary Judgment as to the claimant’s alleged violation of LSA-R.S. 28:1208, which judgment was signed by the trial court on February 23, 2004. However, we cannot consider Mr. Auxi-lien’s claims regarding the February 23, 2004 judgment, because we do not have jurisdiction to review this judgment.
In Mr. Auxilien’s Notice of Appeal, he sought an order from the trial court allowing him to appeal “a final judgment entered on June 21, 2004 dismissing all claims against Osborn Painting, Inc., with prejudice.” Mr. Auxilien did not seek an appeal from the February 23, 2004 judgment, which dismissed his claims for worker’s compensation.[4]
The jurisdiction of the appellate court attaches upon the granting of the order of appeal, and there can be no appeal absent an order of appeal because the order is jurisdictional. LSA-C.C.P. art. 2088; Voelkel v. State, 95-0147 (La.App. 1 Cir. 10/6/95), 671 So.2d 478, 480, writ denied, 95-2676 (La.1/12/96), 667 So.2d 523. This lack of jurisdiction can be noticed by the court on its own motion at any time. Id; LSA-C.C.P. art. 2162.
In Voelkel v. State, supra, the trial court rendered two separate but related judgments. The plaintiffs petition for appeal only indicated that he was appealing one of the judgments, yet the plaintiff treated the appeal as if it were an appeal of both judgments. The First Circuit held that it did not have jurisdiction over the appeal of the second judgment due to the lack of an appeal order from that | (judgment. Similarly, in Clark v. Mangham, Hardy, Rolfs and Abadie, 30,471 (La.App. 2 Cir. 2/24/99), 733 So.2d 43, the plaintiffs sought to appeal two judgments of the trial court, dated April 17, 1997 and April 21, 1997, but the plaintiffs only obtained an order of appeal for one of the judgments. The Second Circuit stated, “... because the Clarks only sought and the court only granted, an appeal of the April 17, 1997 judgment, the subsequent judgment of April 21, 1997 is not properly before us for review.” Id. at 45.
In the present case, our review of the record reveals that Mr. Auxilien did not obtain an order granting an appeal from the February 23, 2004 judgment.[5] *973 Therefore, in accordance with the applicable statutes and caselaw, the judgment of February 23, 2004 is not properly before us for review. However, our review of the record reveals that, even if this matter were properly before us on appeal, Mr. Auxilien would not be entitled to relief. The record establishes that Mr. Auxilien clearly violated LSA-R.S. 23:1208, and thus, he has forfeited his worker’s compensation benefits.
The only assignment of error that is properly before us is whether or not the trial court erred in granting Osborn’s Motion for Summary Judgment as to Mr. Auxilien’s reconventional demand regarding Osborn’s alleged violation of LSA-R.S. 23:1208. In his reconventional demand and on appeal, Mr. Auxilien contends that Mr. Ben Osborn violated LSA-R.S. 23:1208 by making willfully false and misleading statements regarding the drug testing in this case, in an attempt to defeat benefits or payments to Mr. Auxilien. He asserts that Mr. Osborn lied and ^stated that he did not know who ordered the drug screen, but Mr. Sloan Hedrick testified that it was Mr. Osborn who requested the drug testing. Further, Mr. Auxilien contends that Mr. Osborn made willful misrepresentations when he testified in his deposition that he did not learn of the drug test until several weeks after the accident. In its Motion for Summary Judgment, Osborn argues that the reconventional demand should be dismissed because there is no evidence that Mr. Osborn made willful misrepresentations in violation of LSA-R.S. 23:1208.
 Summary judgments are now favored in the law and the rules should be liberally applied. Carr v. Wal-Mart Stores, Inc., 00-896 (La.App. 5 Cir. 10/31/00), 772 So.2d 865, 866, writ denied, 00-3247 (La.1/26/01), 782 So.2d 636. Appellate courts review summary judgments de novo, using the same criteria applied by the trial court to determine whether a summary judgment is appropriate. Cliatt v. Great Atlantic & Pacific Tea Co., 02-909 (La.App. 5 Cir. 12/30/02), 836 So.2d 519, 521; Magic Moments Pizza, Inc. v. Louisiana Restaurant Association, 02-160 (La.App. 5 Cir. 5/29/02), 819 So.2d 1146, 1149.
 A summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, establish that there is no genuine issue of material fact and the mover is' entitled to judgment as a matter of law. Id.; Prince v. K-Mart Corp., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248. The mover bears the burden of proof; however, the mover only needs to “point out to the court that there is an absence of factual' support for one or more elements essential to the adverse party’s claim” in order to prevail on a motion for summary judgment. LSA-C.C.P. art. 966C(2); S.A. Mortgage Service, Co. v. Lemoine, 01-250 (La.App. 5 Cir. 10/17/01), 800 So.2d 1015, 1017, writ denied, 01-3083 (La.2/1/02), 807 So.2d 851. Once the mover has made a prima facie showing that the *974 motion should be granted, the burden shifts to the adverse party to present Isevidence demonstrating that material factual issues remain. Id. If he fails to do so, the mover is entitled to summary judgment. Perricone v. East Jefferson General Hospital, 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48, 51.
In support of its Motion for Summary Judgment, Osborn submitted portions of Mr. Osborn’s deposition and an affidavit from Mr. Osborn. In his affidavit, Mr. Osborn stated that he was truthful in his deposition when he indicated that he did not know who had ordered the drug screen, because he did not know the individual who had specifically requested the testing. He believed that his worker’s compensation carrier required drug testing for accident claims, but he thought that it was the hospital that specifically arranged for the testing. He stated that he does not have any specific recollection of his conversation with Mr. Headrick at the hospital, but he does not deny that he may have told Mr. Headrick that his insurance company required drug testing. He further stated that he did not willfully make any misrepresentations. Finally, he stated that he truthfully did not know that Mr. Auxilien’s drug test was positive until two or three weeks after the accident.
In its Motion for Summary Judgment, Osborn showed that there was an absence of factual support for Mr. Auxilien’s claim that Mr. Osborn made willful misrepresentations in order to defeat Mr. Auxilien’s claim for benefits. Osborn established a prima facie case that it was entitled to summary judgment, so the burden then shifted to Mr. Auxilien to show that material factual issues remain.
Mr. Auxilien asserts that Mr. Osborn made false statements and willful misrepresentations in his deposition, and he submitted portions of the depositions of Mr. Osborn and Mr. Headrick in support of his position. In Mr. Osborn’s deposition, he admitted that Osborn Painting, Inc. did not have written policies for their employees. He also stated that he did not call his worker’s compensation | flcarrier or his attorney prior to arriving at the hospital. According to Mr. Auxilien, the portions of Mr. Osborn’s testimony that contain willful misrepresentations are as follows:
Q: Now, I understand that you became aware of this what I think was a urine test that showed a positive result in some fashion suggesting there was marijuana traces in Mr. Auxilien’s body at the time he got hurt, right?
A: Yes.
Q: That is what this is all about?
A. Right.
Q: How soon after May 6, 2002 did you become aware of that drug test?
A: A couple, three weeks.
[[Image here]]
Q: Do you know who ordered the drug test that was eventually done?
A: No.
Q: And do you know why that test was ordered by whomever it was that ordered it?
A: No.
Mr. Auxilien contends that “it defies belief that Mr. Osborn would have become aware of the drug test several weeks after it was taken when he in fact requested that it be taken.” He also asserts that Mr. Osborn lied when he stated that he did not know who ordered the drug test and why, because Mr. Headrick testified that it was Mr. Osborn who requested the test.
In Mr. Headrick’s deposition, he testified in pertinent part as follows:
Q: What would have led you to make a statement like that? WZhy would *975 this have been a requirement of Worker’s Compensation?
A: Because Mr. Osborn, I believe he said his insurance company requested it, so it’s a Worker’s Compensation requirement, right.
* * * *
|inQ: Okay. So this was — no doubt in your mind this was something the employer initiated and requested? A. Absolutely.
% & jfc
Q: Did you have any contact person other than Ben Osborn?
A: No. No.
ijc jjt
Q: So if Mr. Osborn has testified that he wasn’t aware of any drug test that may have been initiated or requested, you would disagree with that?
A: He requested that—
Q: He definitely requested it.
A. Yeah.
At the hearing on this Motion for Summary Judgment, the trial judge stated in part:
If I understand 12:08 [LSA-R.S. 23:1208] correctly, it requires a false statement — it requires a false statement that is willfully made, and it requires a false statement willfully made with a purpose of acquiring or defeating worker’s compensation benefits.
* * * *
Therefore, I would have to find that Mr. Osborn’s statement, that he didn’t know who ordered the drug screening, if I look at most favorably in the light you presented to me, he didn’t know the name of the individual at the insurance company. He certainly knew it was his insurance company. He’d already testified to that.
Thereafter, the trial judge granted the Motion for Summary Judgment and dismissed Mr. Auxilien’s reconventional demand.
After a de novo review of the matter before us, we find that the trial court was correct in granting Osborn’s Motion for Summary Judgment. The evidence does not establish that Mr. Osborn made willful misrepresentations in order to |ndefeat Mr. Auxilien’s worker’s compensation benefits. Although Mr. Headrick testified that it was the employer, Mr. Osborn, who requested the drug testing, he also testified that East Jefferson General Hospital has a contract with B.A.L & Associates to perform alcohol and drug testing, and it is someone from the hospital who calls B.A.L. to request the testing. He further testified that it was someone from the hospital who called him in this particular case to request that he come to the hospital. Accordingly, when Mr. Osborn stated that he did not know who ordered the test, it is reasonable to believe that Mr. Osborn was testifying truthfully that he did not know the individual who actually requested the test from B.A.L. & Associates. Mr. Osborn does not deny that he believed that his worker’s compensation carrier required post-accident drug testing, and he does not dispute that he told Mr. Headrick that such testing was required by his insurance company.
Mr. Headrick testified that Mr. Osborn requested the testing, but it was someone from the hospital who contacted Mr. Head-rick to request that he come to the hospital to collect a urine sample from Mr. Auxilien for drug testing. The testimony shows that Mr. Headrick and Mr. Osborn did not speak until Mr. Headrick already arrived at the hospital. Mr. Auxilien fias presented no evidence to the contrary. Further, Mr. Auxilien has not shown that Mr. Osborn was aware of the specific individual *976 wbo contacted Mr. Headrick and asked him to come to the hospital. Accordingly we find that there is an absence of -factual support to establish Mr. Auxilien’s claim that Mr. Osborn made willful misrepresentations when he indicated that he did not know who ordered the drug test.
Further, Mr. Auxilien did not submit any evidence to support his assertion that Mr. Osborn knew about the drug test results prior to two or three weeks after the accident. In Mr. Osborn’s testimony, we note that he was asked if he was aware of “a urine test that showed a positive result in some fashion suggesting |12there was marijuana traces in Mr. Auxilien’s body at the time he got hurt.” He was then asked when he became aware of “that drug test,” and he responded, “[a] couple, three weeks.” Considering these statements, Mr. Osborn was apparently testifying that he became aware that the drug screen was positive two to three weeks after the accident. Further, in his affidavit, Mr. Osborn stated that he did not know that Mr. Auxi-lien’s drug test was, positive for marijuana until two or three weeks after the accident. Mr. Auxilien failed to provide evidence that Mr. Osborn made a willful misrepresentation regarding when he learned of the drug test results for the purpose of defeating Mr. Auxilien’s benefits. Accordingly, there is an absence of factual support for Mr. Auxilien’s claims with regard to when Mr. Osborn became aware of the positive drug screen.
Considering the evidence before us, we find that the trial court was correct in granting Osborn’s Motion for Summary Judgment, and dismissing Mr. Auxilien’s reconventional demand against Osborn. Accordingly, we affirm this judgment of the trial court.

DECREE

For the reasons set forth above, we affirm the trial court’s judgment granting Osborn’s Motion for Summary Judgment regarding Mr. Auxilien’s reconventional demand. We decline to consider Mr. Auxi-lien’s remaining arguments on appeal, because he did not obtain an appeal order from the February 23, 2004 judgment.

AFFIRMED.

. There is a dispute between the parties as to when and where Mr. Headrick approached the claimant to request a urine sample for the purposes of drug testing.

. The appellate record does not contain a transcript of this hearing.

. Mr. Auxilien did not title his pleading as a "Reconventional Demand.” Rather, he filed a "Supplemental and Amended Answer” in which he set forth his claims that Mr. Osborn violated LSA-R.S. 23:1208. However, it is the substance of the pleading, not the caption, that determines its effect. Atchley v. Atchley, 01-67 (La.App. 5 Cir. 5/30/01), 788 So.2d 690, 693, writ denied, 01-1915 (La.2/8/02), 808 So.2d 349; Ken Lawler Builders, Inc. v. Delaney, 36,263 (La.App. 2 Cir. 8/14/02), 837 So.2d 1, 6. Accordingly, because Mr. Auxi-lien’s claims set forth in his Supplemental and Amended Answer are in substance a re-conventional demand, we will consider these claims as such.

. Although Mr. Auxilien filed a Notice of Appeal from the February 23, 2004 judgment on March 22, 2004, this appeal request was denied. He did not seek supervisory review of the ruling denying the appeal, nor did he file any other Notice of Appeal seeking review of the February 23, 2004 judgment.

. We also note that the notice issued by the Clerk of Court for District 7 of the Office of Worker’s Compensation indicates that "an order of appeal was entered on July 21, 2004, granting an appeal from the judgment of June 21, 2004." Further, the “Notice of Return Date” issued by the Clerk of Court to all *973 of the parties reads in pertinent part, "[n]o-tice is hereby given that the appeal granted from the Judgment of June 21, 2004, is returnable to the Fifth Circuit Court of Appeal on October 28, 2004.” Neither these notices nor the notice of appeal indicates that an appeal was being sought from the February 23, 2004 judgment. In addition, the "Notice of Return Date” contains a notation to the court reporter as follows: "You are hereby requested to produce the transcript of the proceedings in the above-captioned appeal. Transcript must be received in this office ten days prior to the Return Date — Trial was held June 18, 2004.” This may explain why the transcript of the February 23, 2004 hearing is not contained in the record.