ANTOINE MAKHOUL        *        NO. 2019-CA-1099

VERSUS        *

       COURT OF APPEAL

CITY OF NEW ORLEANS AND    *
SEWERAGE AND WATER        FOURTH CIRCUIT
BOARD OF NEW ORLEANS       *

       STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-08847, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins)

Joseph S. Piacun
Reid S. Uzee
GENNUSA PIACUN & RULI
4405 North I-10 Service Road, Suite 200
Metairie, LA 70006-6564
     COUNSEL FOR PLAINTIFF/APPELLANT


Darryl Harrison
Joseph D. Zanetti
Yolanda Yvette Grinstead
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165
     COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED**

**DECEMBER 16, 2020**

*DLD*
*JFM*
*SCJ*

This is an appeal of a trial court judgment, granting summary judgment in favor of defendant, the Sewerage & Water Board of New Orleans ("S&WB"), and dismissing the claims of the plaintiff, Antoine Makhoul. After our *de novo* review of the record, we find that there are genuine issues of material fact still at issue. The trial court, therefore, erred in granting summary judgment.

We reverse the judgment of the trial court and remand this matter for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

In the early morning hours of June 20, 2015, Antoine Makhoul, a driver for hire, transported some passengers to their destination in the 4000 block of Vincennes Place in New Orleans. Mr. Makhoul exited his vehicle and walked to the rear of the vehicle, where he fell into an unmarked pothole. Mr. Makhoul was injured as a result of this fall.

Mr. Makhoul timely instituted this lawsuit against the S&WB and the City of New Orleans (the "City"). His lawsuit alleged that the City and the S&WB had both actual and constructive knowledge of the dangerous condition presented by

1

this street, and more particularly, this pothole, as numerous homeowners had complained to the City about the conditions of the street.

By way of a first amending petition, Mr. Makhoul added Fleming Construction Company ("Fleming") and its insurer as a defendant to the action on March 18, 2016. According to the amending petition, the City had entered into a July 2010 contract with Fleming for Fleming to perform asphalt paving work around 4006-4008 Vincennes.

A July, 2016 second amending petition added F P Richard Construction d/b/a Rue Contractors ("Rue") and it insurer, Scottsdale Insurance Company ("Scottsdale"), as defendants. Rue is alleged to have entered into a contract with Fleming in June, 2016 by which it was to perform the same tasks that Fleming undertook in its contract with the City, for a job entitled "Repaving Open Cuts in Streets, Driveways, Sidewalks Resulting from the Repair to the Sewerage and Water Board of New Orleans Underground Utilities."

All of the defendants filed motions for summary judgment. Mr. Makhoul subsequently settled his claims against Fleming, Rue and Scottsdale, leaving only the City and the S&WB as defendants in the suit. The S&WB's motion for summary judgment was heard on September 13, 2018 and by judgment dated October 4, 2018, summary judgment was granted by the trial court. The judgment specifically found that

> Plaintiff Antoine Makhoul will not be able to meet his
> burden of proof at trial in that Plaintiff cannot show that
> The Sewerage & Water Board had actual or constructive
> notice of the defect and failed to take corrective action
> within a reasonable time.

Mr. Makhoul initially filed an application for a writ of supervisory review of this judgment, seeking emergency consideration, on October 9, 2018. On October

11, 2018, this Court granted the writ application on two grounds. First, the Court found that the grant of the summary judgment, rendered eleven days prior to trial, violated La. C.C.P. art. 966 C(3) which requires that a judgment be issued not less than twenty days prior to trial. *Makhoul v. City of New Orleans*, 18-0870, *unpub.* (La. App. 4 Cir. 10/11/18). Second, the Court recognized the judgment as a final, appealable judgment, and remanded the matter to the trial court with instructions to consider the notice of intent as a motion for appeal. *Id.*

The matter is now before this Court on appeal of the trial court's grant of summary judgment.

**DISCUSSION**

*Timeliness of appeal*

In its appellate brief, the S&WB raised the issue of the timeliness of Mr. Mahkoul's appeal, although it did not file a motion to dismiss the appeal as untimely.

As noted, after the judgment granting summary judgment was rendered on October 4, 2018, Mr. Makhoul filed a writ application with this Court. Finding that the judgment was final and appealable, this Court remanded the case back to the trial court, directing the trial court "to consider the notice of intent as a motion for appeal."

The trial court did not thereafter issue an order of appeal. Mr. Makhoul thus filed a Motion to Re-set the hearing on the S&WB's motion for summary judgment. The trial court set the hearing for January 10, 2019. The record is rather unclear as to what occurred after that time insofar as there are two consent judgments on the Motion to Re-Set. Both judgments state that judgment was rendered on January 10, 2019 and both provide that "Plaintiff's Motion was

3

withdrawn because Plaintiff's Notice of Intent to Apply for Supervisory Writ was converted to a Motion for Appeal by the Louisiana Fourth Circuit Court of Appeal." One judgment was signed by the trial court on August 8, 2019, but it is also stamped as "Moot." A second judgment reflects that the trial court signed it on August 14, 2019.[1] This latter consent judgment is accompanied by a Notice of Signing of Judgment dated August 14, 2019.

Mr. Makhoul then filed a Petition for Devolutive Appeal on October 15, 2019, seeking to appeal the original judgment of October 4, 2018. An order granting the appeal was issued on October 22, 2019.

The S&WB maintains that Mr. Makhoul's appeal is "facially prescribed." It argues that Mr. Makhoul's appeal is based on the January 10, 2019 judgment and that Mr. Makhoul failed to timely appeal this judgment when he filed his notice of appeal on October 15, 2019. We disagree.

First, there is no judgment in the record dated January 10, 2019. The only judgment for which there is a notice of signing of judgment is the August 14, 2019 judgment; that judgment was signed by the trial court on August 14, 2019. Given that La. C.C.P. art. 2087 A provides that an appeal must be taken within 60 days of

---

[1] Further compounding the confusion is the certificate of service on both of the judgments, signed by counsel for Mr. Makhoul, evidencing that the judgment had been circulated to opposing counsel who objected to the judgment. The record also contains an email from the trial court dated June 6, 2019, stating:

> The Division is in receipt of your competing consent judgments and we are at an impasse. The Judge requires that a consent judgment be submitted jointly by the parties to the consent, evidenced by the signatures of all respective counsel. Here, it does not appear that you have reached a consent as you have each submitted a judgment of your own. The Court will not sign either judgment and asks that you either re-submit the judgment with a proper consent or submit an alternative judgment that is not styled as a consent.

There are no other judgments pertaining to the motion to re-set the hearing on the motion for summary judgment, consent or otherwise, in the record. The judge's signature on the two consent judgments is, therefore, unclear.

4

a judgment,[2] the motion for appeal in this case, filed within 60 days of the written judgment is timely.

In this case, however, Mr. Makhoul's motion for appeal was not necessary. After Mr. Makhoul filed the application for a supervisory writ of review of the October 4, 2018 judgment, this Court remanded the case back to the trial court, with the instruction that the trial court "consider the notice of intent as a motion for appeal." No further action was required of Mr. Makhoul to perfect his appeal. It was incumbent on the trial court to issue an order of appeal, which the trial court failed to do until October 22, 2019.

It is clear that "[a]n order of appeal must be obtained for each final judgment the appellant seeks to appeal." *St. Philip v. Montalbano*, 12-1090, p. 7 (La. App. 4 Cir. 1/9/13), 108 So.3d 277, 282 (internal citations omitted). It is equally clear that "[t]he jurisdiction of the appellate court attaches upon the granting of the order of appeal, and there can be no appeal absent an order of appeal because the order is jurisdictional." *Osborn Painting, Inc. v. Auxilien*, 04-1330, p. 5 (La. App. 5 Cir. 3/29/05), 900 So.2d 969, 972.

Thus, because the trial court did not issue an order of appeal until October 22, 2019, we find the appeal to be timely and find no merit to the S&WB's contention that Mr. Makhoul's appeal is "facially prescribed."

We now turn to the merits of this appeal.

---

[2] La. C.C.P. art. 2087 provides, in pertinent part:

> A. Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of any of the following:
> (1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.

5

***Motion for Summary Judgment***

"A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant." *Garrison v. Old Man River Esplanade, L.L.C.*, 13-0869, p. 2 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 700 (citing *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. "Favored in Louisiana, the summary judgment procedure 'is designed to secure the just, speedy, and inexpensive determination of every action' and shall be construed to accomplish these ends." *Harrington v. Bley*, 12-0149, p. 2 (La. App. 4 Cir. 7/18/12), 101 So.3d 64, 65 (internal citations omitted).

A motion for summary judgment shall be granted only when "the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 B(2). The movant bears the burden of proof. La. C.C.P. art. 966 C. "However, if the movant will not bear the burden of proof at trial . . . , the movant's burden" is "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966 C(2). "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La. C.C.P. art. 966 C(2).

Motions for summary judgment are reviewed by appellate courts *de novo* "under the same criteria governing the trial court's consideration of whether summary judgment is appropriate." *Weddborn v. Doe*, 15-1088, p. 4 (La. App. 4

6

Cir. 5/4/16), 194 So.3d 80, 84. An appellate court is to use the same standard "applied by the trial court in deciding the motion for summary judgment; as a result, [it is] not required to analyze the facts and evidence with deference to the judgment of the trial court or its reasons for judgment." *Smith v. State*, 18-0197, p. 3 (La. App. 4 Cir. 1/9/19), 262 So.3d 977, 980 (quoting *Orleans Parish Sch. Bd. v. Lexington Ins. Co.,* 12-0095, p. 5 (La. App. 4 Cir. 8/28/13), 123 So.3d 787, 790). An appellate court, therefore, "look[s] at the record before [it] and make[s] an independent determination regarding whether there are genuine issues of material fact that would preclude granting summary judgment." *Id*.

In its motion for summary judgment, the S&WB maintained that Mr. Makhoul would not be able to meet his burden of proof of liability on the S&WB's part, an essential element of his claim against it. More particularly, the S&WB argued that, under La. R.S. 9:2800, a public entity is liable for a defect only when it has actual or constructive knowledge of the defect. While we agree that La. R.S. 9:2800 C requires a showing of "actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence," our *de novo* review of the record reflects that there remain issues concerning the S&WB's liability under the statute.

La. R.S. 9:2800 C provides that "no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has

7

had a reasonable opportunity to remedy the defect and has failed to do so."[3]

"Constructive notice shall mean the existence of facts which infer actual knowledge." La. R.S. 9:2800 D. Our jurisprudence interpreting this article indicates that:

> In order to recover under La. R.S. 9:2800, the plaintiff must prove that: (1) the thing which caused the damage was owned or in the custody of the public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity had actual or constructive notice of the defective condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was the cause of the plaintiff's harm.

*Smith*, 18-0197, p. 5 (La. App. 4 Cir. 1/9/19), 262 So.3d 977, 981.

The S&WB does not dispute that it performed work at the location where Mr. Makhoul fell into the pothole; in fact, it admitted that it performed work at that location from December 1, 2014 to December 8, 2014. Thereafter, pursuant to a contract between the S&WB and Fleming and a subcontract between Fleming and Rue, Rue performed concrete and asphalt work at the location.[4] The work was completed on January 6, 2015.

The S&WB maintains that it had no notice after that time of any defect in the surface work performed by Rue or in the surface itself. In support of this contention, the S&WB submitted the affidavit of Vana Acker, an employee of the claims department of the S&WB. Ms. Acker's affidavit indicates that, after her

---

[3] La. C.C. art. 2317 states, in pertinent part, that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

[4] The S&WB had previously entered into a contract with Fleming on July 23, 2010 by which Fleming had agreed "to furnish . . . all the necessary labor and all materials" to "do all the work of every kind required under [the] contract." The contract provided for Fleming's "re-paving open cuts in streets, driways [sic], sidewalks resulting from the repair to the Sewerage and Water Board of New Orleans Underground Utilities." Fleming, then, entered into a subcontract with Rue on June 1, 2013 for Rue to perform some of the work called for in the contract between the S&WB and Fleming.

8

research and review of the S&WB's business records of service requests or work orders "generated for the area in the vicinity of [the] 4800 block of Vincennes Place at or near [its] intersection . . . with Fontainebleau Drive," she only found the December 1, 2014 service request "showing work was completed by [the S&WB] on December 8, 2015 and F.P. Richard/Rue on January 6, 2015.[5] She found no other service requests "in the vicinity of 4800 Vincennes Place at or near the time of Plaintiff's alleged incident."

The S&WB's motion for summary judgment was opposed by Mr. Makhoul, Rue and its insurer. As the oppositions point out, the work performed at the direction of the S&WB at the end of December, 2014 and early January, 2015 was necessitated by complaints of leaks on Vincennes Place in 2014. The record contains several S&WB service requests for street leaks in the area dated November 4, 2014, December 1, 2014, December 3, 2014 and December 6, 2014.

Repair work was performed at the 4000 block of Vincennes Place and the S&WB's "Completed Work Activity Work Order" reflects the completion of work on December 8, 2014. This Order notes the "action taken" as follows: "Examine water leak at above location [4000 block of Vincennes Place;] found 6" water main broken, repaired with an 6 x 12 repair clamp, 8' x 8' st." After the S&WB made the necessary repairs, the S&WB backfilled the area with dirt. Pursuant to a work order dated December 11, 2014, Rue undertook the task of re-paving that area. This entailed installing a 7 foot by 9 foot, eight inch thick concrete base, and a 2 inch asphalt surface over the concrete base.

---

[5] It is clear that this statement contains a typographical error and the December 8 date should be 2014 rather than 2015.

Records from the S&WB show that, on January 19, 2015, a complaint was made to the S&WB regarding a "sewer choke" and "main sewer down" on Vincennes Place, about 98 feet from its intersection with Fontainebleau (which is in the 4000 block of Vincennes Place). A second complaint was made on January 21, 2015, while a third complaint was made on January 22, 2015. There are two S&WB's Completed Work Activity Work Orders from that time period. One of these orders shows work completed on January 21, 2015 and notes the action taken as follows: "found c/o back-up[;] used 30 feet of hose too [sic] unchoke c/o pipe broke 15 feet out, referred to zone 3 to make repairs (broke in street)." The second order shows work competed on January 22, 2015 shows that the area was "excavated at above location in the street over 6'." A January 25, 2015 Work Activity report shows that the S&WB repaired the area and backfilled it with a top layer of sand or rock.

The S&WB's records contain a March 5, 2015 document reflecting a "cut on Vincennes" (in the same area) which needed "paving" and "site investigation," a task assigned to Fleming. Rue performed the work under its subcontract with Fleming, which consisted of saw-cutting a 14 foot by 14 foot area, and pouring asphalt over the area (as well as pouring an adjacent concrete driveway). Unlike the prior repair work, this work, specified by the S&WB did not include a concrete base. Rue completed the work on March 20, 2015.

There does not appear to be any further records between that time and Mr. Makhoul's fall into the hole on Vincennes Place, although there are records of complaints after that time.[6] The S&WB contends that, without having had any

---

[6] The record contains reports of leaks in the street in the 4000 block of Vincennes Place after the date of this incident: a November 16, 2015 report of a leak in the street (an "inlet service leak in

10

complaints regarding the hole between March 20, 2015 and the June 20, 2015 incident, it did not have the notice required by La. R.S. 9:2800 for it to be liable. We disagree and find that there remain genuine issues of material fact as to its liability.

In opposition to the S&WB's motion for summary judgment, Mr. Makhoul submitted the affidavit of a licensed civil engineer, Kevin Vanderbrook, who has "worked on a variety of projects involving civil and structural engineering, including projects involving the analysis of cause of subsidence." In his opinion, the 4000 block of Vincennes Place has experienced subsidence, as is evident from the numerous complaints made to the S&WB or the City. According to Mr. Vanderbrook:

> Broken sewer pipe or sewer pipe that has lost its integrity allows sediment to be washed away through the sewer pipe during rain events. When sediment is washed away in such a fashion, it causes subsidence and potholes.

Thus, in Mr. Vanderbrook's opinion, the hole in which Mr. Makhoul fell "was caused by subsidence or the wash out of sediment through a sewer pipe."

Mr. Makhoul also submitted the affidavit of a registered and licensed professional engineer, Patrick W. Fisher, who reviewed all of the documents, photographs and depositions connected to this litigation. After reviewing the chronological history of the area in which Mr. Makhoul fell and noting that this area is "well within the 14 x 14 foot asphalt section that was reportedly saw cut and poured for full depth asphalt overlay," Mr. Fisher gave his opinion that "the

---

an asphalt flooding street & gutter bottom"); a March 8, 2016 report of "inlet service leak in an asphalt street flooding gutter bottom"). A Completed Work Activity Work Order shows work completed in September 17, 2016: "excavated in asphalt street over depression caused by bad backfilled water in driveway was rain water compacted backfilled and dressed up area." Work was also performed in March and April, 2017 in the 4000 block of Vincennes Place.

hole was caused and/or contributed to by defective asphalt overlay work in March 2015 that did not conform to the S&WB's written specifications." He further opined, "to a reasonable degree of probab[ility] based on the information and evidence known to [him] at this time," that:

> the hole was also likely caused and/or contributed to by defective work performed by the S&WB, including: (i) erosion of the subsurface base caused by defective installation of the sand and aggregate backfill; and/or (ii) subsurface erosion caused and/or created by the S&WB's failure to properly complete the sewer line repair job in January 2015.

No countervailing affidavits were offered by the S&WB in response to Mr. Vanderbrook's or Mr. Fisher's affidavits.

Mr. Mahkoul relies on the case of *Toledano v. Sewerage & Water Bd. of City of New Orleans*, 95-1130 (La. App. 4 Cir. 3/14/96), 671 So.2d 973, in support of his contention that the S&WB is presumed to have knowledge of the defective condition (the hole) which caused Mr. Makhoul's alleged injuries. We find *Toledano* to be persuasive.

In *Toledano*, the plaintiff was injured when her vehicle went into a hole as she was parallel parking. The hole had been dug by the S&WB for the purpose of repairing a sewer pipe. The S&WB had excavated a twelve foot deep hole, made the repairs, filled it with river sand with a limestone cover. In defense of the plaintiff's lawsuit, the S&WB argued that it had no actual or constructive notice of any hazardous conditions and therefore, it was not liable under La. R.S. 9:2800. Rejecting this argument, this Court noted that "the incident did not occur in an area where a pothole developed over a period of time, which requires notice and a reasonable opportunity for the public entity to remedy the defect." *Id.*, p. 4, 671 So.2d at 975.

12

The Court then found:

> [The] S & WB performed the excavation so that it created the defective condition of the hole or depression into which the plaintiff's vehicle fell. Because the S & WB recently created the defect by its own substandard conduct, it is presumed to have knowledge.

*Id.*

"Where a defendant moves for summary judgment based on the lack of proof of a material fact, 'the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.'" *Watson v. Smith*, 17-0913, p. 5 (La. App. 4 Cir. 5/16/18), 247 So.3d 811, 814 (quoting *Huber v. Liberty Mut. Ins. Co.*, 00-0679, p. 7 (La. App. 4 Cir. 2/7/01), 780 So.2d 551, 554)(internal citation omitted).

In the instant case, Mr. Makhoul submitted an affidavit that supports his contention that the pothole at issue in this case was attributable to the S&WB and that, under the *Toledano* case, the S&WB is presumed to have had knowledge of this defective condition. Likewise, Mr. Makhoul presented sufficient evidence for which a jury could return a verdict against the S&WB. At the least, we find that there remain genuine issues of material fact as to the liability of the S&WB for which summary judgment is inappropriate. The trial court, thus, erred in granting summary judgment in the S&WB's favor. We therefore reverse the trial court judgment.

**CONCLUSION**

For the reasons set forth herein, the trial court's judgment granting summary judgment in favor of the Sewerage & Water Board is reversed. We remand this matter to the trial court for further proceedings.

**REVERSED**