929 So.2d 188 (2006)
Printess TATE, Jr.
v.
PROGRESSIVE SECURITY INSURANCE COMPANY, Gilbert Louis Brown, St. Paul Fire and Marine Insurance Company and Imperial Fire & Casualty Insurance Company.
No. 2005-CA-0393.
Court of Appeal of Louisiana, Fourth Circuit.
March 22, 2006.
*189 Leon A. Aucoin, Law Offices of Leon A. Aucoin, Covington, Counsel for Plaintiff/Appellee.
David J. Bourgeois, C. Michael Pfister, Nicole McDaniel Bowen, Duplass, Zwain, Bourgeois & Morton, Metairie, Counsel for Defendant/Appellant.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr. and Judge LEON A. CANNIZZARO, Jr.)
TERRI F. LOVE, Judge.
St. Paul Fire and Marine Insurance Company appeals the granting of summary judgment on the issue of Gilbert Brown's designation as an independent contractor. On de novo review, we reverse the judgment of the trial court finding that genuine issues of material fact exist and remand for further proceedings in accordance with this opinion.

FACTS AND PROCEDURAL HISTORY
The instant litigation arises out of a car accident, which occurred on March 19, 2002. Printess Tate ("Mr. Tate") alleges that he was operating a 1987 International Truck owned by his employer, Diamond Food Distributors, in a southerly direction on Peters Road in the Parish of Jefferson on the date of the accident. As Mr. Tate was stopped in traffic at the intersection of Peters Road and Lester Street, he was allegedly struck by a truck pulling a trailer owned and operated by Gilbert Brown ("Mr. Brown"). As a result of the accident, Mr. Tate was pushed into the rear of a 1991 Oldsmobile owned and operated by Lynn Williams[1]. Following the accident, Mr. Brown contacted Durr Heavy Construction, L.L.C. ("Durr"), for whom he was working for at the time of the accident, to notify a representative of Durr that he had been in an accident.
Durr's employee, Kent Cheramie, arrived at the scene shortly after the accident and assisted Mr. Brown in unloading the sand he was transporting.
As a result of the accident and injuries sustained, Mr. Tate filed suit against Mr. Brown and his insurer, Progressive Security Insurance Company; St. Paul Fire and Marine Insurance Company ("St. Paul"), insurer for Diamond Food Distributors; and Mr. Brown's uninsured/underinsured motorist carrier, Imperial Fire and Casualty Company. Mr. Tate later filed amending and supplemental petitions alleging that at the time of the accident, Mr. Brown was in the course and scope of his employment with Durr. Thus, he added Durr and its insurer, The Gray Insurance Company, to the litigation alleging they are vicariously liable for Mr. Brown as his employer.
Durr filed a Motion for Summary Judgment asserting that Mr. Brown is an independent contractor and therefore not an employee of Durr. St. Paul filed a Cross-Motion *190 for Summary Judgment asserting that the evidence established that Mr. Brown is an employee of Durr.
The trial court granted Durr's motion for summary judgment, finding that Mr. Brown was an independent contractor. Its reasons for judgment stated in pertinent part:
Gilbert Brown owned the vehicle that was operated by him as "Gilbert Brown Truck Service" on the date of the accident. He was paid by the load for any deliveries he made for Durr and did not receive benefits from Durr. Neither did Durr reimburse Brown for any expenses. On occasion, Brown would call Durr to inquire whether there was any work, and if he wanted to work, he went to Durr to get the ticket and information on the loads to be hauled. Durr did not tell Brown what route to take. Brown was free to work for other companies or individuals. Durr only used Mr. Brown when there was a need for additional haulers. Durr sent tax forms to Brown, but Brown handled his own taxes. Brown maintained his own auto insurance.

STANDARD OF REVIEW
Summary judgments are reviewed de novo on appeal whereby the appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. Marcades v. Cleanerama, Inc., 02-0357, p. 3 (La.App. 4 Cir. 9/25/02), 831 So.2d 288, 289.
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512. p. 27 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
The burden of proof in a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial, then the movant's burden only requires her to point out the absence of factual support for one or more of the essential elements. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).

DURR'S ARGUMENTS AND EVIDENCE
In support of its motion for summary judgment, Durr submitted the affidavit of James E. Turner who stated:
1) I am an authorized representative of Durr Heavy Construction, L.L.C. in the capacity of operations manager;
2) I am familiar with the work performed by Gilbert L. Brown and have personal knowledge of the facts stated in this Affidavit;
3) Durr Heavy Construction, L.L.C. has its own employees and trucks. However, on occasion, Durr Heavy Construction, L.L.C. has a need for additional trucks and persons to haul loads for it. On some of these occasions, Durr Heavy Construction, L.L.C. has used the services of Gilbert L. Brown d/b/a Gilbert Brown Truck Service;
4) Gilbert Brown is paid by the load, and Durr Heavy Construction, L.L.C. does not withhold any taxes or provide any benefits to Mr. Brown; and,
5) At the end of the year, Durr Heavy Construction, L.L.C. sends a 1099 tax *191 form to Gilbert L. Brown for the amounts paid to him during the year.
Durr argued that the Affidavit of Mr. Turner and Mr. Brown's deposition testimony established that Mr. Brown was not an employee of Durr as Durr maintains its own employees and equipment and only used the services of Mr. Brown when additional equipment and haulers were needed. Moreover, Mr. Brown was paid by the load, he did not receive any reimbursement of expenses, he received no benefits, no taxes were withheld from his pay, Mr. Brown was not required to work exclusively for Durr and he was allowed to choose his own route when making hauls.

ST. PAUL'S ARGUMENTS AND EVIDENCE
In response, St. Paul filed a cross-motion for Summary Judgment wherein it submitted the deposition testimonies of Mr. Brown and Mr. Turner asserting that there exists no genuine issue of material fact that Mr. Brown was an employee of Durr.

MR. TURNER'S TESTIMONY
Mr. Turner's affidavit states that Durr occasionally used Mr. Brown's services and he was not required to work exclusively for Durr. However, in his deposition, Mr. Turner testified that during the five years preceding the accident, Mr. Brown was one of the drivers that was utilized by Durr "virtually more or less every day". Further, Mr. Turner recalled Mr. Brown working for Durr for at least fifteen to twenty years prior to the accident. According to Mr. Turner, Mr. Brown did not have a written contract but Durr contracted with him orally by the load. Either he or Mr. Cheramie could terminate Mr. Brown for any reason. Mr. Turner indicated that Mr. Brown would "probably follow any route assigned to him by Durr".

MR. BROWN'S DEPOSITION TESTIMONY
Mr. Brown testified that he worked exclusively for Durr for at least seven years prior to the accident and had not worked for any other company but Durr since March 19, 2002. Mr. Brown testified that as "his supervisor", Mr. Cheramie would designate his route and would further designate specific locations for his deliveries.

DISTINCTION BETWEEN INDEPENDENT CONTRACTOR AND EMPLOYEE
"The distinction between employee and independent contractor status is a factual determination that must be decided on a case-by-case basis, taking into consideration the total economic relationship between the parties and the various factors weighing either in favor of or against an employer-employee relationship." Elmore v. Kelly, 39,800, pp. 4-5 (La.App. 2 Cir. 7/29/05), 909 So.2d 36, 38. In contrast, to an independent contractor relationship, "[t]he essence of the employer-employee relationship is the right to control." Hillman v. Comm-Care, Inc., 01-1140, p. 8 (La.1/15/02), 805 So.2d 1157, 1162. The four primary factors evidencing the right to control are: 1) selection and engagement, 2) payment of wages, 3) power of dismissal and 4) power of control. Id. "None of these factors alone is determinative of an employer/employee relationship. Rather, the totality of circumstances must be considered." Harrington v. Hebert, 00-1548, p. 7 (La.App. 3 Cir. 5/23/01), 789 So.2d 649, 653 (citations omitted).
The Supreme Court enumerated several factors for courts to consider in determining independent contractor status in Morales v. Davis Bros. Construction Co., 94-0902 p. 8 (La.App. 4 Cir. 12/15/94), 647 So.2d 1302, 1305: 1) whether there is a valid contract between the parties; 2) whether the work being done is of an *192 independent nature such that the contractor may employ non-exclusive means in accomplishing it; 3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal; 4) whether there is a specific price for the overall undertaking; and 5) whether a specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.
In Murray v. Option Care, 00-2065 (La. App. 4 Cir. 11/21/01), 801 So.2d 1203, the plaintiff, Mr. Murray hired Optioncare to adjust and refill his morphine pump. Optioncare hired Nurse Rusich to assist with the care of Mr. Murray. At some point during the care, Mr. Murray suffered an overdose. Mr. Murray filed suit against Nurse Rusich and Optioncare, alleging that Nurse Rusich was an employee of Optioncare and, therefore, they were vicariously liable for Nurse Rusich's negligence. Optioncare argued that Nurse Rusich was an independent contractor and filed a motion for summary judgment, which was granted by the trial court.
This Court reversed the granting of the motion for summary judgment stating:
Optioncare argues that Nurse Rusich was an independent contractor because it gave Nurse Rusich a Form 1099 rather than a Form W-2, because it paid her out of its operations account rather than its payroll account, because it paid Nurse Rusich per visit rather than paying her a salary and because it gave her no vacation. However, while all of these facts are consistent with Optioncare's theory that Nurse Rusich was an independent contractor, they are not necessarily determinative.
Instead, the single most important factor in determining whether there is an employment relationship versus an independent contractor relationship is the right of the employer to control the work of the employee. In the present case, Nurse Rusich testified in her deposition... to the effect that Optioncare did have the right to control her work. It is not entirely clear how much Optioncare actually exercised its right to control Nurse Rusich's work and Optioncare cites some testimony by her to the effect that Optioncare did not actually exercise much control over various aspects of her work. However, it is the right of the employer to exercise such control, regardless of the actual exercise thereof, which is most important.
Based upon the summary judgment record, particularly the transcript of Nurse Rusich's deposition, we must conclude that there is a genuine issue of fact as to whether Nurse Rusich was an employee or independent contractor of Optioncare.
Murray, 00-2065. pp. 2-3, 801 So.2d at 1204. [internal citations omitted; emphasis in original]
Similarly, in the case sub judice, Durr provided evidence that Mr. Brown was paid by the load, did not receive reimbursement of any expenses, did not receive any benefits, had no taxes withheld from his pay, Durr did not have an exclusive arrangement with him, and he was allowed to choose his own route when making the hauls. Conversely, Mr. Brown stated in his deposition that Durr had the option of designating his route if they chose to exercise the option.
St. Paul established that there was no written contract between Mr. Brown and Durr, Mr. Brown worked exclusively for Durr for seven years, Mr. Brown was directed by Durr as to the location and time to deliver each load, and Durr could terminate Mr. Brown with or without cause at any time.
*193 After reviewing the record de novo, we conclude that the evidence establishes genuine issues of material fact. The trial court was presented with conflicting evidence regarding Mr. Brown's status with Durr. When the evidence presented is subject to different interpretations and the trier of fact must weigh contradictory testimony and assess witness credibility on a material fact, summary judgment is not proper. Johnson v. Government Employees Insurance Company, 05-476, p. 3 (La. App. 3 Cir. 11/2/05), 916 So.2d 451, 455.

DECREE
For the reasons outlined above, we reverse the granting of summary judgment and remand for further proceedings in conformity with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Lynn Williams is not a part of this appeal.