ARTHUR CARLIN      *      NO. 2022-CA-0566

VERSUS      *

     COURT OF APPEAL

CLEAR BLUE INSURANCE      *
COMPANY, CENTRAL      FOURTH CIRCUIT
DISPATCH, INC., CENTANNI      *
LIMITED PARTNERSHIP,      STATE OF LOUISIANA
AND MELVIN RUSSELL      * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-01571, DIVISION "B-5"
Honorable Rachael Johnson
* * * * * *
**KAREN K. HERMAN**
**JUDGE**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge Karen K. Herman)

JEFFREY P. GREEN
CAYCE C. PETERSON
JJC LAW LLC
3914 Canal Street
New Orleans, Louisiana 70119
     COUNSEL FOR PLAINTIFF/APPELLEE

BRADLEY J. LUMINAIS, JR.
HEATHER W. BLACKBURN
KUTCHER TYGIER & LUMINAIS, LLP
3850 North Causeway Boulevard
Two Lakeway Center, Suite 900
Metairie, Louisiana 70002
     COUNSEL FOR DEFENDANTS/APPELLANTS

**REVERSED AND REMANDED**
**FEBRUARY 8, 2023**

KKH
TFL
JCL

Defendants-Appellants, Clear Blue Insurance Company, Central Dispatch, Inc., Centanni Limited Partnership, and Melvin Russell, appeal the trial court's June 13, 2022 judgment, which granted the motion for partial summary judgment filed by Plaintiff-Appellee, Arthur Carlin, on the issue of liability. For the following reasons, we reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

This lawsuit stems from a motor vehicle accident that occurred on or about April 29, 2019, at the intersection of Claiborne Avenue and Cleveland Avenue. According to the petition, Arthur Carlin, Plaintiff ("Plaintiff), was driving a black 2008 Chevrolet Silverado southbound on Cleveland and his traffic signal was green. Plaintiff alleges that as he entered the intersection, Defendant, Melvin Russell ("Russell"), traveling eastbound on Claiborne Avenue, disregarded the red traffic signal and entered the intersection, causing a collision between the two vehicles. Russell was driving a white 2013 Nissan van with a trailer, owned by Defendant, Centanni Limited Partnership ("Centanni").

1

As a result of the alleged injuries sustained, on February 17, 2020, Plaintiff filed suit against Russell, his employer, Central Dispatch, Inc. ("CDI"), the owner of the Nissan, Centanni, and their insurer, Clear Blue Insurance Company (collectively, "Defendants").

On April 6, 2022, Plaintiff filed a motion for partial summary judgment on liability, arguing the evidence shows that Russell ran a red light and caused the collision. In support of the motion for partial summary judgment, Plaintiff submitted the affidavit of James Morton, the records custodian of Tulane University Police Department, which authenticated and included the body-cam video worn by Officer Jarvis ("Off. Jarvis") of the Tulane Police Department, who came upon the incident, and the surveillance video, which documented the collision at the intersection. Plaintiff also included the affidavit of and excerpts of the deposition of Wayne Winkler ("Winkler"), an accident reconstruction expert; excerpts of the deposition of Officer Matthew Malveaux ("Off. Malveaux") of the NOPD, who investigated the accident; excerpts from the deposition of CDI's corporate representative, Joni Gravolet ("Gravolet"); excerpts of the deposition of Alvin Bladsacker ("Bladsacker"), the CDI's dispatcher; the excerpts of Plaintiff's deposition and Russell's deposition; as well as Defendants' responses to Plaintiff's requests for admissions, wherein they denied that Russell entered the intersection on a red traffic signal.

The surveillance video depicts the intersection of Cleveland Avenue and Claiborne Avenue and shows traffic moving through and stopping at the intersection. At approximately thirty minutes in, both the white van, traveling on Claiborne Avenue, and the black truck, traveling on Cleveland Avenue, come into view. The traffic lights that are facing the drivers are not visible. However, the

pedestrian light on Claiborne Avenue is red and the pedestrian light on the Cleveland Avenue is green. The black van collides with the white van on the driver's side, towards the back. Thereafter, the traffic behind the white van stops.

Body-cam video of Off. Jarvis depicts a conversation between the officer and Plaintiff subsequent to the accident, wherein Plaintiff stated that he had the green light. The video also shows signal lights changing colors.

In his deposition, Winkler stated that based on his investigation of the accident, he concluded that Plaintiff had a green light as he approached the intersection and that Russell had a red light.[1] Winkler said he reviewed the police report, the surveillance video, the body-cam video, deposition testimony, google maps, and personally inspected the scene prior to forming his opinion. He stated that signal light sequencing he had observed was consistent with what was depicted in the surveillance video. Winkler testified that Russell had an overhead arm with two signal heads governing his travel on Claiborne Avenue. He also stated that there were two signal heads mounted on posts for pedestrians, which would have been visible to a driver in Russell's position.

Winkler acknowledged that the surveillance video does not depict the traffic lights facing Russell but stated that the pedestrian lights are apparent and are synchronized with the lights facing Russell's direction. He noted that both the

---

[1] Winkler's affidavit contains similar statements to the testimony provided in his deposition. Winkler attested in his affidavit about his credentials and the evidence he examined in forming his opinion. He opined that the surveillance video shows that all the lights facing Plaintiff were green and the lights facing Russell were red. He stated that Plaintiff's actions were reasonable under the circumstances and Plaintiff would not have been able to stop before impact. He opined that Plaintiff had a reasonable expectation that motorists traveling east on Claiborne Avenue would stop for the red light and Russell violated that expectation. He attested that Russell failed to notice the red light and entered the intersection without slowing or stopping.

body-cam video and the surveillance video show that the pedestrian signal lights change color and that those lights were concurrent with the traffic flow.

Off. Malveaux testified that upon viewing the surveillance video he determined that Russell disregarded a red light and Plaintiff had the green light. Off. Malveaux admitted that the video does not show the light from the direction in which Plaintiff was approaching but stated that the pedestrian light, which corresponds with the traffic light, was visible and shows that the light was green. He stated that the video shows several rounds of traffic going through the intersection, which demonstrated that when it was a green light that the traffic on Cleveland Avenue proceeded and that the Claiborne Avenue traffic stopped and vice versa. Off. Malveaux stated that all lights were functioning and correlating with each other. He stated that when he interviewed Russell after the incident, Russell maintained that he had a green light. Off. Malveaux admitted that he was unable to view the light facing Russell in the video.

Gravolet, CDI's corporate representative, testified that Russell was disciplined for the accident because it was deemed preventable. She stated that Russell indicated that he did not see a red light when he entered the intersection and that the "light mustn't been working because [he] didn't see -- have a red light." Gravolet admitted that she does not have any documentation of Russell's statement in that regard. Gravolet stated that CDI did not call NOPD or other law enforcement agency to report a malfunctioning light at the intersection. She testified that aside from Russell's testimony, she is unaware of other evidence suggesting there was a malfunctioning light.

Bladsacker, CDI's dispatcher, said that he visited the scene of the accident and that Russell told him that he had a green light. Bladsacker did not have any

4

information, excluding Russell's statement, to contradict Plaintiff's account that Plaintiff had a green light. He also stated that he has no evidence that the light facing Russell had malfunctioned.

Plaintiff testified that he had the green light at the time of the collision. He admitted he was talking on his cell phone at the time but stated that the phone was not in his hand. Plaintiff said the cell phone was on speaker phone and located in the car console.

Russell testified he had a green light as he approached the intersection. He also stated that he advised the investigating officer he had a green light at the hospital. Russell acknowledged that the officer told him that based on the surveillance video it appeared that Russell had a red light. Russell said that after watching the video of the incident, he still thinks he had the green light. Russell indicated that he observed one green light when he approached the intersection and that the light had a malfunction.[2] Russell testified that he saw "two lights, one that

_____

[2] The transcript of Russell's deposition testimony provides, in relevant part:

> [Attorney] Q. … All right, so after watching the video, do you still believe that you had a green light at the time of this wreck?
>
> [Russell] A. Yes, sir. The light underneath the bridge is like it's a malfunction. One is red right now and one green light.
>
> Q. And you think that light under the bridge all the way on the left is facing you?
>
> A. It's facing the same way as the one that's green.
>
> Q. Is it?
>
> A. Yes, sir.
>
> Q. Okay. And so is it your testimony, then that when you pulled up to this intersection, you actually saw two lights, one that was red and one that was green?
>
> A. Yes, sir.
>
> Q. Okay. Did you see anything that happened in that video that doesn't accurately represent die wreck as you remember it?

was red and one that was green." Russell admitted that the video does not depict that the light malfunctioned at the time of the accident.

On May 2, 2022, Defendants filed an opposition to the motion for partial summary judgment. Defendants argue that genuine issues of material fact exist as to whether Russell had a red light at the time of the accident and whether Plaintiff was comparatively at fault in causing the accident, which preclude summary judgment as to liability. In support thereof, Defendants also included portions of Russell's deposition, Off. Malveaux's deposition, and Winkler's deposition, Plaintiff's deposition, and Defendants' discovery responses. [3]

The motion came for hearing before the trial court on May 20, 2022.[4] The trial court granted the motion for partial summary judgment. The judgment, executed June 13, 2022, provided, in relevant part:

---

A. The light malfunctions.

....

Q. Sir, as you approach the intersection of Claiborne and Cleveland, how many traffic light signals can you see?

A. In the video, I saw two.

Q. But I'm asking, as you were driving up to and on the date of this wreck, how many traffic light signals could you see?

A. Just that one.

Q. Okay. Just the green one, right?

A. Yes, sir.

[3] Most of the testimony in the depositions provided by Defendants in opposition was also contained in the deposition excerpts provided by Plaintiff in his motion for summary judgment. The content of those depositions is therefore included in the discussion of Plaintiff's evidence.

[4] The transcript of the May 20, 2022 hearing on the motion for partial summary judgment was not contained in the record. On January 20, 2023, this Court ordered Defendants to supplement the record with the missing transcript. This Court received the May 20, 2022 hearing transcript on January 26, 2023.

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment on Liability against Defendant Melvin Russell is GRANTED;

IT IS FURTHER ORDERED that Melvin Russell is found to be 100% liable for the motor vehicle wreck at issue in this matter.

This appeal follows.

## STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Garrison v. Old Man River Esplanade, L.L.C.,* 2013-0869, p. 2 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 700; *Duncan v. U.S.A.A. Ins. Co.*, 2006-0363, p. 3 (La. 11/29/06), 950 So.2d 544, 546.

"A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Schultz v. Guoth*, 2010-0343, pp. 5-6 (La. 1/19/11), 57 So.3d 1002, 1005-1006 (quoting Samaha v. Rau, 2007–1726, pp. 3–4 (La.2/26/08), 977 So.2d 880, 882–83); *Smith v. Treadaway*, 2013-0131, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828.

La. C.C.P. art. 966(A)(3) provides that a motion for summary judgment will be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions,

7

answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id*. La. C.C.P. art. 966(D)(1) sets forth the burden of proof in summary judgment proceedings, as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). "If he does not so respond, summary judgment, if appropriate, shall be rendered against him." *Id*.

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Crosby v. Sahuque Realty Co., Inc.*, 2021-0167, p. 6, --- So.3d ----, ----, 2021 WL 4771687 at *3 (La. App. 4 Cir. 10/13/21) (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). "A fact is material when its existence or

nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Crosby*, 2021-0167, pp. 6-7, --- So.3d at ----, 2021 WL 4771687 at *3 (citing *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81).

A trial court may not weigh conflicting evidence or make credibility determinations in deciding a motion for summary judgment. *Danna v. Ritz-Carlton Hotel Co., LLC,* 2015-0651, p. 6 (La. App. 4 Cir. 5/11/16), 213 So.3d 26, 32 (citing *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 2015-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320 and *Jeffers v. Thorpe*, 1995-1731, p. 4 (La. App. 4 Cir. 1/19/96), 673 So.2d 202, 205). Additionally, "[a]ny doubt regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Danna,* 2015-0651, p. 7, 213 So.3d at 32 (quoting *Smith*, 1993-2512, p. 27, 639 So.2d at 751).

"Any consideration as to whether the plaintiff will succeed at a trial on the merits is irrelevant and an insufficient basis to render a summary judgment against that party." *Jones v. Gov't Emps. Ins. Co.,* 2016-1168, p. 7 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 921 (quoting *Barbarin v. Dudley*, 2000-0249, p. 6 (La. App. 4 Cir. 12/20/00), 775 So.2d 657, 660).

**DISCUSSION AND ANALYSIS**

On appeal, Defendants argue that the trial court erred in granting the motion for partial summary judgment because genuine issues of material fact exist as to whether Russell entered the intersection on a green light and thus was liable in causing the accident.

9

Defendants note that Russell's testimony and discovery responses show that he had a green light at the time of the accident. Russell also testified, upon viewing the video surveillance, he still believed that he had a green light and that the light under the bridge had malfunctioned such that one green light and one red light were facing him. Defendants claim that Russell's testimony alone shows a genuine issue of material fact for trial.

Defendants further correctly note the videos, upon which Winkler and Off. Malveaux base their opinion that Russell had a red light, do not show the color of the signal light that faced the drivers at the time of the accident. Defendants argue that in granting the motion for partial summary judgment the trial court improperly favored the testimony of Off. Malveaux and Winkler over the testimony of Russell.

Plaintiff, on the other hand, contends that Russell's testimony that he had a green light is conclusory, improbable, and unsupported and is therefore insufficient to create a genuine issue of material fact. *See Sears v. Home Depot, USA, Inc.,* 2006-0201, p. 12 (La. App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228 (stating "[m]ere conclusory allegations, improbable inferences and unsupported speculation will not support a finding of a genuine issue of material fact"). Plaintiff also argues that while the videos do not show the lights facing Russell or Plaintiff, the pedestrian lights for each street are visible and correspond with the lights facing the drivers. Plaintiff argues that the surveillance video shows several rounds of traffic at the Cleveland-Claiborne intersection prior to the accident and "[a]nyone can – and [Off.] Malveaux and Winkler did – discern which color the signal light facing [] Russell was at the time of the incident by reviewing the video." Plaintiff notes that both Off. Malveaux and Winkler testified that they observed the streetlights at the scene and they were functioning and correlated with

10

the pedestrian lights. Plaintiff further claims that Defendants have not produced any evidence to corroborate Russell's testimony regarding the purported light malfunction.

As noted above, a trial judge cannot make credibility determinations on a motion for summary judgment. *M.R. Pittman Grp., L.L.C.*, 2015-0860, p. 11 182 So.3d at 320 (citing *Independent Fire Insurance Co. v. Sunbeam Corp.,* 1999-2181, 1999-2257, p. 16 (La. 2/29/00), 755 So.2d 226, 236). "Similarly, when ruling on a motion for summary judgment a trial judge cannot consider the merits, evaluate testimony, or weigh evidence." *Id*. (citing *Suire v. Lafayette City–Parish Consol. Gov't,* 2004-1459, 2004-1460, 2004-1466, p. 11 (La. 4/12/05), 907 So.2d 37, 48. "On the other hand, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Id*. (citing *Citron v. Gentilly Carnival Club, Inc*., 2014-1096, p. 12 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 312).

Here, there is conflicting testimony regarding the color of the light facing Russell at the time of the accident, which creates an issue of material fact for trial. Although the testimony of Plaintiff, Off. Malveaux, and Winkler suggests that Russell had a red light, Russell maintained that he had a green light and/or the light was malfunctioning at the time of the collision such that he still observed a green light when he approached the intersection.[5] The record shows that Russell also advised Off. Malveaux, Gravolet, and Bladsacker that he had a green light when he entered the intersection. Gravolet further testified that Russell indicated that the traffic light must have malfunctioned because he did not observe a red light prior

_____

[5] *See* n. 2.

11

to the accident. Russell's statements regarding the green and/or malfunctioning traffic light "create[] … a credibility issue for which summary judgment is inappropriate." *See Weddborn v. Doe*, 2015-1088, p. 11 (La. App. 4 Cir. 5/4/16), 194 So.3d 80, 88;[6] *see also Tate v. Progressive Sec. Ins. Co.,* 2005-0393, pp. 8-9 (La. App. 4 Cir. 3/22/06), 929 So.2d 188, 193 ("[w]hen the evidence presented is subject to different interpretations and the trier of fact must weigh contradictory testimony and assess witness credibility on a material fact, summary judgment is not proper").[7]

Moreover, as argued by Defendants, Winkler and Off. Malveaux reached the conclusion that Russell had a red light based on the video of the incident, which does not actually show the color of the light facing Russell at the time of the collision. As discussed above, only the pedestrian lights are visible and while Off. Malveaux and Winkler testified that the pedestrian lights correlated with the traffic lights governing the drivers, neither Off. Malveaux nor Winkler were witnesses to the accident and did not observe the color of the traffic light facing Russell at the time of the accident. Russell is the only person who viewed the traffic lights governing him when he approached the intersection. Because there is conflicting testimony regarding the color of the light facing Russell at the time of the accident and because evidence cannot be weighed on a motion for summary judgment, this

---

[6] In *Weddborn,* 2015-1088, pp. 4, 11, 194 So.3d at 84, 88, this Court recognized that a self-serving affidavit can create an issue of material fact on a motion for summary judgment and ultimately found an insured's sworn statement denying she executed a UM rejection form established a question of credibility.

[7] This Court recently found that internally contradictory testimony is insufficient to create a triable issue of fact. *See Steib v. Lamorak Ins. Co.,* 2020-0424, p. 20 (La. App. 4 Cir. 2/3/21) --- So.3d ----, ----, 2021 WL 503240 at *8-9, *writ denied*, 2021-00453 (La. 6/8/21), 317 So.3d 326. However, Russell's testimony is that he saw a green traffic light and that he saw a green light when he approached the intersection due to a malfunction. These statements are not necessarily inconsistent because Russell still maintains that he observed one green light when he entered the intersection. *See* n. 2.

matter is not ripe for summary judgment. *See Citron*, 2014-1096, p. 12, 165 So.3d at 313 (stating that in determining whether a genuine issue of material fact exists on a motion for summary judgment, "a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence"). Genuine issues of material fact exist as to whether Russell had a red light at the time of the collision. Accordingly, we find that the trial court erroneously granted Plaintiff's motion for partial summary judgment as to Russell's liability for the accident.[8]

**CONCLUSION**

For the above stated reasons, we find that the trial court erred in granting the motion for partial summary judgment in favor of Plaintiff. We reverse the trial court's judgment and remand the matter to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

_____
[8] Defendants also claim that the trial court erred in granting the partial summary judgment because genuine issues of material fact remain as to whether Plaintiff caused or contributed to the accident because Plaintiff was using his cell phone at the time and because he had sufficient time to avoid the accident and failed to do so. However, because this Court finds genuine issues of material fact exist as to whether Russell had a green light and/or the light malfunctioned at the time of accident, it does not address this argument.